Daniel G. Albert, J.
This is an action to declare void and unconstitutional the Zoning Ordinance enacted by the defendant, Village of Muttontown, on November 16, 1959, insofar as it affects property owned by plaintiff in the village.
Plaintiff is the owner of an 18-acre parcel of real property located in the Incorporated Village of Muttontown, which, by the alleged Building Zone Ordinance, was classified a Residence 1£A-3” District, thus limiting the use of said property to the construction of detached one-family residences on lots measuring a minimum of one-half acre.
Plaintiff’s property is located on the southeasterly boundary of the village, It is bounded on the east by property in the Town of Oyster Bay which is zoned Business ££ Gr ” and which is used as a marshalling and service area for school buses. Plaintiff’s property is bounded on the south by Underhill Boulevard, a wide, heavily travelled thoroughfare. The property on the south side of Underhill Boulevard is almost entirely within the Town of Oyster Bay and, under the zoning regulations of the Town of Oyster Bay, is used exclusively for industrial purposes. Some portion of the south side of Underhill Boulevard which is located within the Village of Muttontown is zoned and used exclusively for ££ Economic Development District ” purposes. To the north and east of plaintiff’s property is a narrow, winding, country-type road known as Willis Avenue. This road constitutes part of plaintiff’s property; and to the north of Willis Avenue is a golf club.
It is plaintiff’s contention that his property is not reasonably adaptable for the purposes set forth in the Zoning Ordinance *535 and that its value for such purposes is grossly disproportionate to its value for other uses; that since the adoption of the aforesaid Building Zone Ordinance the character of the neighborhood has changed markedly and has been developed for industrial purposes so as to render plaintiff’s property completely unusable and unsuited for the purposes to which it is limited under the ordinance adopted on November 16, 1959; that the aforesaid ordinance is not part of a comprehensive zoning plan of the village and that it is not designed to, nor does it, have any relation to promoting the health and general welfare of the community. Accordingly plaintiff contends that the aforesaid ordinance is unreasonable, arbitrary and confiscatory as applied to his property and hence should be declared unconstitutional and void.
The defendants deny all of plaintiff’s contentions.
The testimony indicates that until the early 1950’s the general area wherein the subject property is located was serviced by a narrow, winding road known as Willis Avenue which extended from Syosset Station in a westerly direction through the area where Underhill Boulevard is now located; and that in approximately 1953 or 1954 the roadway was reconstructed into Under-hill Boulevard running from Syosset Station to Jericho Turnpike, and Underhill Boulevard became an extremely wide and very heavily travelled commercial thoroughfare, which at that time was located entirely within the Town of Oyster Bay. In approximately 1959 limited land located in that area, which included the subject property of the plaintiff, was incorporated into the Village of Muttontown and was originally established by the village as a residential two-acre zone. The testimony further indicates that 95% of the land in the Village of Mutton-town at the present time is zoned for residential two-acre use and that only an infinitesimal part thereof is zoned residential one-acre, residential one-half acre, and for economic development. Indeed the defendants’ zoning expert, Frederick P. Clark, the apparent author of the existing zoning plan ordinance testified that in making his study and recommendations for submission to the Board of Trustees of the Village of Muttontown prior to the adoption of the ordinance in question he had been required to zone in terms of the residential character of Muttontown in order “to preserve the fundamental low-density residential character of the village It therefore becomes apparent that the character of the territory as a whole with particular regard to the nature of the surrounding community was ignored in the planning and adoption of the Zoning-Ordinance under attack in this action.
*536 By far the most important issue to be determined by this court regarding the subject property in this action is the determination as to whether the zoning precludes the use of the property for any use for which it is reasonably adapted. This was also an important issue in the case of Chusud Realty Corp. v. Village of Kensington (40 Misc 2d 259, affd. 22 A D 2d 895 [2d Dept.]). In that case the Appellate Division in its affirmance adopted the ground rules enunciated by the Special Term (pp. 262-263) when it stated the factors which are to be considered in arriving at the determining of the ‘ ‘ use which it is reasonably adapted”: “ The character of the neighborhood, the zoning and use of properties nearby, the suitability of the subject property for the uses to which restricted, .the extent to which removal of the restriction will detrimentally affect nearby property, the length of time since structures of the .type permitted by the restriction have been built in the area, and the balance between the welfare of the public and the rights of the private owner (Shepard v. Village of Skaneateles, 300 N. Y. 115, 118; Dowsey v. Village of Kensington [257 N. Y. 221], 226, 230; Matter of Eaton v. Sweeny, 257 N. Y. 176, 183; see Vernon Park Realty v. City of Mount Vernon [307 N. Y. 493], 499; Arverne Bay Constr. Co. v. Thatcher, 278 N. Y. 222, 230-233; Rockdale Constr. Co. v. Incorporated Vil. of Cedarhurst [94 N. Y. S. 2d 601, affd. 275 App. Div. 1043, affd. 301 N. Y. 519]; 8 MeQuillin, Municipal Corporations [3d ed. rev.], §§ 25.40-25.46).”
This court visited the subject property and studied the entire surrounding area at the suggestion and in the presence of the attorneys for the plaintiff and for the Village of Muttontown.
The proof in .the case indicates and the court personally noted that diagonally across from the easterly end of the subject property there is a school bus marshalling and parking area which daily handles approximately 60 to 70 large school buses, a substantial number of which are constantly in the area of plaintiff’s property; that directly across Underhill Boulevard from plaintiff’s property a large good warehouse is located and according to the testimony occupies over 200,000 square feet of space and services approximately 70 to 80 trailer trucks daily, many of which line up on the west side of Underhill Boulevard directly adjacent to plaintiff’s property; that directly opposite the plaintiff’s property, on an area zoned for “ Economic Development ’ ’ by the Village of Muttontown, is a very large lumber storage' warehouse owned by the Georgia Pacific Company. The testimony also shows, that in addition to the foregoing, there is located within the immediate vicinity of the *537 subject property a manufacturing plant of the Singer Sewing Machine Company; that adjacent to that is a building of the Crest Company; adjacent to that is a large storage warehouse owned and operated by the Metropolitan Food Distributors; then there are warehouses owned by Bader Brothers, a furniture moving concern; a large manufacturing plant operated by the Kollsman Instruments Company; the Pollack or Groware Corporation, a manufacturing company; a bus washing station on the northerly side; a lumber yard and saw mill opposite thereto; and finally the Long Island Railroad has a freight spur across the road on Underhill Boulevard from which the court observed a number of railroad freight cars easily visible from the subject property.
Applying the ground rules adopted by the Appellate Division in the Ghusud case (supra) we find (1) that the character of the neighborhood in the immediate vicinity of the subject property consists largely of bus and rail facilities, some vacant land, an edge of a golf course separated from the property by a narrow, winding road (Willis Avenue) and largely a number of substantial industrial plants; (2) that the properties in the immediate neighborhood of the subject property are zoned by the Town of Oyster Bay for ‘ Light Industrial ’ ’, and by the Village of Muttontown for “ Economic Development ”, and that the neighboring properties are so being used, other than the nearby golf course and vacant land; (3) that the subject property is not reasonably adaptable to residential use, as zoned, unless the owner thereof sustains a substantial financial detriment as compared to the use to which the property is reasonably adaptable, if zoned properly; (4) that the removal of the existing Residence “A-3” zoning limitation would cause no detrimental effect whatever on the golf course or vacant land adjacent to the subject property, and certainly be of no detrimental effect to all on the heavy industry installations already in existence and operating in the immediate area; (5) that since the adoption of the existing Residence “ A-3 ” zoning ordinance in 1959 no residences have been constructed in the area so zoned; and (6) a change in the present zoning restriction wall in no way be detrimental to the public health, safety or welfare of the community.
Another important issue to be determined in this action is the plaintiff’s contention concerning the gross disproportion between the lesser value of the subject property as presently zoned, and its greater value if zoned for the use for which plaintiff contends it is reasonably adapted.
Plaintiff’s real estate expert, Baker, testified that the subject property was not reasonably adaptable for residential use and *538 that if it were so used it had only a nominal value of $18,000 or of $45,000 for’ horticultural use as compared with approximately $784,000 if zoned for economic development, The same witness testified, concerning the difficulty of selling such property under the restricted residential one-half acre use as presently zoned, as follows: ‘(I do not believe it could be sold. I don’t believe that any builder would go in and buy this property with the intent of putting residences on the property, because of its location and its proximity to the manufacturing and distribution center which is right across the street from it. People just don’t like to live in that kind of an area. And anybody who tries to build, you can lead a horse to water but you can’t make him drink. They can’t sell the houses after they get them built at any price which will either return anything to the land or any profit to the builder.”
When questioned regarding the possible involvement of the public health of the community, the same witness testified: “ The only relation which I can see that this has to health is that it’s an inclement location for anybody to live in, and if it is relegated to residential construction it is going to put the occupants under living conditions which are, in my opinion, not conducive to healthful enjoyment.”
In the Chusud case (supra) the issue of the disproportionate value of the subject property as zoned from its value if zoned for an apartment house and store use was squarely before the trial court and was excluded. But it is significant to note that the Appellate Division in affirming the decision of the Special Term in the Chusud case specifically pointed out that the lower court had erred in not permitting this testimony concerning the comparative value of the property to be included in the testimony when it stated (pp. 896-897): “ Consequently, in establishing its case, the plaintiff here was entitled to show the gross disproportion between the lesser value of the subject property as presently zoned, and its greater value if zoned for the apartment house and store use for which the proof indicated it was reasonably adapted (Dowsey v. Village of Kensington, supra).”
This court Ayas not impressed with the testimony of defendants’ principal expert witness, Dr. Joseph M. Klein, in attempting to establish that the subject property was readily adaptable for residential purposes on one-half acre lots and could be sold without difficulty at prices ranging from $35,000 to $45,000, His gallant offer on the witness stand to purchase the property for the sum of $200,000 was subsequently largely deflated by the exceptions and objections which he raised when plaintiff offered to accept his offer. There immediately appeared the provision *539 of “ builders’ terms ”, and then a lower offer of $165,000 when he stated that he took borings of the soil, after originally testify» ing that these were not necessary; and then by stating that because of the nature of the soil each home to be constructed on this property would cost substantially more than he originally contemplated because of the clay bottom in the soil and the difficulty in constructing cesspools therein. After personally observing the location of the property and taking careful note of the character of all of the surroundings in the area this court came to the conclusion that the testimony of this witness was substantially incredible under all the circumstances.
Defendants make some point of the fact that the plaintiff was aware of the Zoning Ordinance as adopted in 1959 before he purchased the subject property. The cases are legion in this State which hold that where a zoning ordinance is unconstitutional at the time of purchase, knowledge by the purchaser of the nature of the zoning at the time of purchase will not render such void zoning ordinance constitutional; and that knowledge of the owner cannot validate an otherwise invalid ordinance. This well-established principle of law was enunciated in the case of Vernon Park Realty v. City of Mount Vernon (307 N. Y. 493, 500-501) wherein the Court of Appeals stated: “Purchase of property with knowledge of the restriction does not bar the purchaser from testing the validity of the zoning ordinance since the zoning ordinance in the very nature of things has reference to land rather than to owner (Bassett on Zoning, p. 177). Knowledge of the owner cannot validate an otherwise invalid ordinance. The owner’s right to attack the validity of a zoning ordinance is not waived by the circumstance that he has on a previous occasion applied for a variance. Such an application is, primarily, an appeal to the discretion of the board and, for that purpose, the validity of the ordinance is assumed but that does not operate to confer validity if, in fact, as here, the zoning ordinance is clearly confiscatory (cf. Arverne Bay Constr. Co. v. Thatcher, supra). Conversely, an attack on the legality of a zoning ordinance prior to any request for a variance has long been accepted as proper procedure (Dowsey v. Village of Kensington, supra).”
This principle was also followed by the Appellate Division in this Department in the Chusud case.
A situation practically identical with the one here in issue was presented to the courts of this State in the case of Dowsey v. Village of Kensington (257 N. Y. 221, 230-231, supra) wherein Judge Lehmait writing for a unanimous Court of Appeals stated:
*540 “ The inference is reasonable that the property fronting on Middle Neck Eoad has been included in the residence district primarily for the purpose of providing a beautiful and dignified village frontage on the public thoroughfare.
“ -¿Esthetic considerations are, fortunately, not wholly without weight in a practical world. Perhaps such considerations need not be disregarded in the formulation of regulations to promote the public welfare. (Matter of Larkin Co. v. Schwab, 242 N. Y. 330.) ‘ Public welfare ’ is a concept which in recent years has been widened to include many matters which in other times were regarded as outside the limits of governmental concern. As yet, at least, no judicial definition has been formulated which is wide enough to include purely aesthetic considerations. Certainly an ordinance is unreasonable which restricts property upon the boundary of the village to a use for which the property is not adapted, and thereby destroys the greater part of its value in order that the beauty of the village as a whole may be enhanced. In such case the owner of the property cannot be required to ask as a special privilege for a variation of the restriction. The restriction itself constitutes an invasion of his property rights. ’ ’
Comparing the language quoted above by our Court of Appeals, and giving serious consideration to the testimony of defendants’ expert witness, Clark, the inference is likewise inescapable that that which Judge Lehman indicated was the fact in the Dowsey case, is likewise the fact in the instant case, namely, that the property fronting on Underhill Boulevard in the Village of Muttontown was included in the residence district “ primarily for the purpose of providing a-beautiful and dignified village frontage on the public thoroughfare.” This court also strongly supports the view so well stated by Judge Lehman that “ an ordinance is unreasonable which restricts property upon the boundary of the village to a use for which the property is not adapted for here, too, the subject property is located directly upon the boundary of the Village of Muttontown in the immediate area of Underhill Boulevard.
If we were to assume, arguendo, that the ordinance under attack may have been valid when adopted in November, 1959, and at that time may well have been a proper exercise of police power by the Village Board under the facts and circumstances then existing, nevertheless this court concludes that under all the facts and circumstances here shown the continuation of this zoning restriction on the subject property is an improper deprivation of plaintiff’s rights to use his property for the use to which it is “ reasonably adapted ”. “ ‘ By the same token, an *541 ordinance valid when adopted will nevertheless be stricken down as invalid when, at a later time, its operation under changed conditions proves confiscatory (Abie State Bank v. Bryan, 282 U. S. 765) such, for instance, as when the greater part of its value is destroyed (Dowsey v. Village of Kensington, 257 N. Y. 221), for which the courts will afford relief in an appropriate case.’ (Quoted with approval in Vernon Park Realty v. City of Mt. Vernon, 307 N. Y. 493, 499).” (Horn Constr. Co. v. Town of Hempstead, 41 Misc 2d 438, 445.)
This court is of the opinion and reaches the conclusion that the action of the legislative body, in this instance the Board of Trustees of the Village of Muttontown, in continuing its Zoning Ordinance enacted on November 16, 1959 which includes plaintiff’s property in a Residence “ A-3 ” zone is unreasonable and arbitrary and therefore the zoning is unconstitutional and void. Accordingly the defendants’ motion at the end of plaintiff’s case and of the whole case, on which decision was reserved, will now be denied. Judgment will be granted declaring the present zoning of the property arbitrary and unreasonable. This court expresses no opinion regarding the use of the property for which it should be zoned. The determination made herein merely declares the present zoning of the property as unconstitutional, and does not constitute a declaration of what the zoning should be. Determination of ‘ ‘ most appropriate use of land ” is for the Village Board (Village Law, § 177).