OPINION OF THE COURT
Walter J. Relihan, Jr., J.
The plaintiff, in this declaratory judgment action, is the pres *268 ent owner of a large commercial building in downtown Binghamton. It was once occupied by the Fair Store, a home furnishings emporium which, in former days, answered the needs of the carriage trade. Later, the property was converted to office space. Alas, the depopulation of the downtown retail shopping center has marooned the property. Today, we are advised, the building is without tenants.
The former owner, Court & Henry Street Development, Inc. (Court & Henry), defaulted on its mortgage and conveyed title, in lieu of foreclosure, to a subsidiary of the mortgagee bank on October 10, 1997. The mortgage debt then stood at $838,786. As part of the recapture transaction, the bank agreed that Court & Henry could retain any refunds from a pending 1997 tax certiorari proceeding regarding the old Fair Store building. Two other downtown properties, owned by Court & Henry, were also involved in that proceeding.
Court & Henry settled the three claims with the City. An order was signed on May 1, 1998 approving the stipulated reductions. The order was entered upon the rolls of the Broome County Clerk on June 1, 1998. Assessments of the two downtown buildings still owned by Court & Henry were reduced by nearly half. The old Fair Store, now owned by the bank subsidiary, was reduced by only 4.5% from $1,675,200 to $1,600,000. The terms of the “global” settlement of the three cases favored the interests of Court & Henry in respect to its continuing ownership of two parcels but left the old Fair Store assessment substantially unchanged.
The bank then sought to sell the Fair Store. The plaintiff, Susquehanna Development, L. L. C. (Susquehanna), knew that the last major tenant had declined to renew its lease and would remain as a month-to-month tenant. Susquehanna also knew that the subject property had been assessed at $1,675,200 and, by March 1998,. had been advised that the assessment was “excessive” (see, Hynes appraisal report, exhibit A, at 10, attached to Weitsman affidavit). Both factors, presumably, led the plaintiff to reduce an earlier offer of $500,000 to $400,000. It is not clear that plaintiff actually knew of the May 1, 1998 order which approved the stipulated reduction in assessment from $1,675,200 to $1,600,000.
Negotiations between the plaintiff and the bank continued through the summer and fall of 1998. The lower offer of $400,000 was accepted by the bank and the deal closed on December 31, 1998. The next day, January 1, 1999, the City *269 again assessed the subject property at the $1,600,000 figure. Susquehanna, in May 1999, petitioned the City to reduce the assessment as excessive and to fix the value of the property at the December 1998 purchase price of $400,000 which, arguably, more accurately reflected the current economic realities in the downtown retail district. The petition was denied.
Susquehanna then filed a petition, in July 1999, seeking judicial relief from the assessment under article 7 of the Real Property Tax Law. Shortly thereafter, Susquehanna also commenced this action for a declaratory judgment, alleging that the City’s $1,600,000 assessment was 400% of the full value of the property and that the three-year moratorium upon any new tax certiorari proceeding, imposed by RPTL 727, is unconstitutional on its face and as applied to the plaintiff. The Attorney General, having been notified of the constitutional issue, appeared but declined to participate further in this litigation.
Article XVI, § 2 of the NY Constitution mandates that “ [assessments shall in no case exceed full value.” It is well settled that “full value” means the price upon which a reasonably informed buyer and seller would agree, in an open market setting, and that the best evidence of such value is a recent sale of the subject property between such a buyer and seller, neither of whom is acting under any constraint or compulsion regarding the transaction (Matter of Allied Corp. v Town of Camillus, 80 NY2d 351; Matter of Onondaga County Water Dist. v Board of Assessors, 45 AD2d 258, 261). While other methods of valuation are available, including capitalization of income or reproduction costs less depreciation, neither method seems appropriate or useful in this case. Indeed, the City has made no such argument. Hence, for our purposes, the fair market method is the “preferred measure of a property’s value for assessment” (Matter of Allied Corp. v Town of Camillus, supra, at 356).
The only comparable sales, of course, were the two transactions involving the subject property itself. The first is the deed, in lieu of foreclosure, given by the mortgagor in exchange for a satisfaction of its $838,786 note. This transaction, obviously, more nearly resembles a salvage operation than a free market investment. The second is the plaintiff’s purchase of December 31, 1998 at a price of $400,000. Both figures are greatly exceeded by the assessment of $1,600,000. We have been shown no computation, based upon any fair and realistic method, which would support the current assessment which is double *270 the October 1997 bank recapture price and quadruple the December 1998 sale price. Any final determination of a defensible valuation, of course, must be found in the presently suspended certiorari action.
It remains to consider the effect of RPTL 727 (1) which states: “where an assessment being reviewed * * * is found to be unlawful, unequal, excessive or misclassified by final court order or judgment, the assessed valuation so determined shall not be changed * * * for the next three [annual] succeeding assessment rolls.” The order of May 1, 1998 simply noted that the action brought by Court & Henry “is hereby settled and discontinued.” It described the principal terms and, in addition, noted that “all other terms and conditions of the stipulation are upheld.”
Comparing the statute and the order (assuming any such scrutiny occurred) a reasonably prudent real estate investor might be forgiven for concluding that the RPTL 727 moratorium had not been triggered by the stipulation because the court had not determined that the assessment was “excessive” and no such finding appeared in the final order. However, in December 1999, almost exactly one year after the plaintiffs purchase of the property, the Appellate Division, Third Department, held that the moratorium requires no such express recital in the court order and that any such adjusted assessment binds the parties who participated in the certiorari proceeding for the period of the RPTL 727 moratorium (Matter of Rosen v Assessor of City of Troy, 261 AD2d 9).
RPTL 727, with its three-year moratorium, became effective on January 1, 1996 and was intended, in part, to protect taxpayers from unfair assessment practices. We recognize, however, that a party may waive statutory and even constitutional rights enacted for its benefit or protection where the rights affect a largely private interest and no important consideration of public policy or morals is involved (see, e.g., Salla v County of Monroe, 64 AD2d 437, 442, affd 48 NY2d 514, cert denied 446 US 909). The bald rule is often couched in much stronger terms. The private interest, it is said, must be the exclusive interest affected and the statute or constitutional provision involved must have been enacted solely for the protection of the waiving party or the class to which such a party might belong.
A close reading of the cases, however, reveals a more pragmatic working rule. The font of subsequent jurisprudence on the subject is Mayor of City of N. Y. v Manhattan Ry. Co. *271 (143 NY 1), decided by the Court of Appeals in 1894. There, the Court held that a corporation, by performing a contract for the construction of subways, waived its right to defeat the City’s claim for the payments due under the contract. The Court accepted the corporation’s argument that the project had been authorized by a constitutionally defective statute but held that a constitutional mandate, enacted to serve a public purpose, nevertheless may affect only a private interest when the mandate is applied to a particular party (143 NY, at 26). Where these circumstances exist, it would seem, even a valued public interest embedded in the State Constitution may be sacrificed in exchange for the enhancement of a private interest if the trade is conscious and deliberate on the part of the waiving party and works no meaningful injury to the common good.
This working rule, we believe, would have barred Court & Henry from commencing any further certiorari proceeding against the City regarding the old Fair Store during the three-year moratorium period following the May 1, 1998 order of the court. Clearly, Court & Henry made a knowing calculation of private benefits and burdens in relation to the three properties involved in its settlement with the City. Like the Manhattan Railway Company of 1894, Court & Henry could not thereafter embrace the benefits of the deal and, simultaneously, reject its burdens.
There is no evidence, at this point, that Susquehanna was privy to the negotiations between Court & Henry and the City or that plaintiffs interests were considered in the deal which was struck. Indeed, the position the plaintiff would come to occupy after December 31, 1998, as new owner of the subject property, was damaged by the minimal reduction allocated to that property in May 1998. Accordingly, fairness forbids imposing upon Susquehanna the conscious waiver or estoppel justified by the knowing and calculating conduct of the Manhattan Railway Company. Lastly, Court & Henry and the City Assessor could not, by the force of their private stipulation, bind Susquehanna to the minuscule downward adjustment of the Fair Store assessment (Matter of Big “V” Supermarkets v Assessor of Town of E. Greenbush, 114 AD2d 726, 728).
The uninvolvement of Susquehanna, however, does not end the inquiry. The Real Property Tax Law, unlike a mere contract, binds the world. Moreover, any actual ignorance of the enactment and effect of RPTL 727 and its moratorium will not erase the knowledge which must be imputed to Susque *272 hanna by operation of law. Ignorantia juris non excusat is an ancient but still regnant maxim. Similarly, the recordation of the court order on June 1, 1998 must be counted as sufficient to have given plaintiff constructive notice that a reduction in assessment, however modest, had occurred. Clearly, the plaintiff had imputed knowledge of the existence of RPTL 727, and the effect of its moratorium, as well as the May 1998 reduction of the Fair Store assessment. Finally, it might be argued, the Matter of Rosen gloss, applied in 1999, did not make new law but simply explicated a meaning implicit in RPTL 727 from its 1996 inception.
We must now determine the effect of that imputed knowledge upon the plaintiffs declaratory judgment cause of action. It is well settled, in the zoning field, that the “[p]urchase of property with knowledge of the restriction does not bar the purchaser from testing the validity of the zoning ordinance since the zoning ordinance in the very nature of things has reference to land rather than to owner * * * Knowledge of the owner cannot validate an otherwise invalid ordinance” (Vernon Park Realty v City of Mount Vernon, 307 NY 493, 500; see also, Repicci v Sharpe, 96 AD2d 727; Socha v Smith, 33 AD2d 835; Chusud Realty Corp. v Village of Kensington, 22 AD2d 895, 896; Plymouth Bldrs. v Village of Lindenhurst, 284 App Div 895; Matter of Lemp v Town Bd., 90 Misc 2d 360, 363; Schwartz v Lee, 50 Misc 2d 533).
Thus, in the realm of zoning law, even actual knowledge of a preexisting zoning restriction will not prevent a purchaser of the burdened property from challenging the validity of the restriction. We have found no case which applies this concept to real property tax assessments. However, both zoning and assessment determinations .generate in rem effects upon land, not persons. Hence, an argument could be mounted that a subsequent owner, though on actual notice of the facts, should be as free to test the validity of a prior assessment as a prior zoning restriction. On that analogy, even actual knowledge of the prior excessive assessment would not bar an attack upon the assessment of the res, as beyond the outer bounds set by the State Constitution, unless the subsequent owner had waived any right to complain by some complicity in a prior adjustment within the moratorium period.
The undisputed facts compel the conclusion that the present assessment (i.e., $1,600,000) far exceeds the full value limit imposed by the State Constitution on any conceivable valuation formula. Moreover, we find no evidence that plaintiff, by *273 its conduct, was complicit in the prior reduction of assessment within the moratorium period. Accordingly, the plaintiff is not estopped from the prosecution of its tax certiorari petition.
We cannot assume that the Legislature intended that RPTL 727 would be invoked to suspend the operation of the constitutional limitation upon the real property taxing power. The Legislature must have reasoned that RPTL 727 would operate within the NY Constitution and subject to its mandate that assessments “shall in no case exceed full value.” (NY Const, art XVI, § 2.) In that contemplation, there is no inherent conflict between the State Constitution and RPTL 727. Hence, there is no need to conclude that RPTL 727 is unconstitutional on its face. However, where the assessment is clearly in excess of full value, the application of the statutory moratorium to a non-complicit transferee raises a far different and much sharper issue. Here, the statute must yield to the constitutional command.
We recognize that our conclusion may permit a subsequent owner to petition for a further reduction within three years and, thus, defeat the moratorium and the salutary purposes of RPTL 727 to afford both municipalities and taxpayers a measure of stability and temporary repose. Any such result, however, would require an unlikely combination of factors, i.e., an assessment in excess of constitutional limits and a transferee with no connection to an assessment reduction within the moratorium period. The benefits of the moratorium could be lost, on occasion, but only in the service of a more important vindication of fundamental law.
Plaintiff is entitled to summary judgment on its third cause of action, with appropriate declarations that the challenged assessment of the subject property exceeds full value, and that RPTL 727 is unconstitutional to the extent that defendants seek to apply the moratorium to defeat plaintiff’s claim for relief from an assessment in excess of the limit imposed by article XVI, § 2 of the NY Constitution. Accordingly, defendants’ motion to dismiss plaintiffs petition in the pending tax certiorari proceeding must be denied. Defendants are directed to promptly serve and file an answer in that proceeding. Plaintiff’s remaining causes of action for declaratory relief are dismissed.