[7 NYS3d 422]

In the Matter of ELT HARRIMAN, LLC, Appellant, v ASSESSOR OF TOWN OF WOODBURY et al., Respondents, and BOARD OF EDUCATION OF THE MONROE-WOODBURY CENTRAL SCHOOL DISTRICT, Intervenor-Respondent.

Second Department, April 22, 2015

### APPEARANCES OF COUNSEL

*Huff Wilkes LLP*, Tarrytown (*David C. Wilkes* and *Joseph A. Danko* of counsel), for appellant.

*Tarshis, Catania, Liberth, Mahon & Milligram, PLLC*, Newburgh (*Holly L. Reinhardt* of counsel), for respondents.

*Thomas, Drohan, Waxman, Petigrow & Mayle, LLP*, Hopewell Junction (*Daniel Petigrow* and *David H. Strong* of counsel), for intervenor-respondent.

### OPINION OF THE COURT

DILLON, J.P.

This appeal presents the first occasion for an appellate court to address whether the three-year moratorium on tax certiorari proceedings under RPTL 727 (1) is unconstitutional when applied to a successor property owner. For the reasons set forth below, we find that the moratorium is binding and not unconstitutional as applied to the circumstances of this case.

Facts

These proceedings arise out of annual tax assessments upon six parcels of real property totaling approximately 133 acres (hereinafter the property), located along Route 17 in the Town of Woodbury, Orange County. The respondents, the Assessor of the Town of Woodbury and the Board of Assessment Review of the Town of Woodbury (hereinafter together the Town), rendered an assessed valuation for the property of $6,003,200 for the years 2006 and 2007. Using the state-mandated equalization rate of 31.74%, the assessed value of the property equates to a fair market value of $19,054,156. However, the valuation did not reflect certain known environmental contamination that negatively affected the property's value. Accordingly, on July 21, 2006, and July 26, 2007, the then-owner of the property, nonparty Rutherford Chemicals, LLC, which was in the business of developing and producing chemicals, commenced tax certiorari proceedings challenging the Town's 2006 and 2007 assessments (hereinafter the Rutherford proceedings).

On November 30, 2007, Rutherford sold the property to the petitioner, ELT Harriman, LLC, in what was classified as a

"negative value transaction," in which Rutherford agreed to pay Harriman the sum of $5,614,061 for remediation expenses that it would incur in rehabilitating the property. While Harriman made no initial investment for obtaining title to the property, and the exchange was classified as a negative value transaction, the purchase and sale agreement protected Rutherford from potentially greater expenses if Harriman outsourced to a third party the remediation efforts it was required to perform. Further, Rutherford and Harriman acknowledged in paragraph 11.3 of the purchase and sale agreement that there were pending tax certiorari proceedings regarding the property, and that any tax modifications resulting from the proceedings would not trigger any price adjustment between the contracting parties. The deed transfer and closing of title occurred on December 3, 2007.

On July 1, 2008, Harriman, as the property's new owner, commenced its own tax certiorari proceeding challenging the Town's property tax assessment for 2008 and, thereafter, commenced additional proceedings for tax years 2009 and 2010 (hereinafter collectively the Harriman proceedings). The assessed value for the property in 2008, 2009, and 2010 was the same $6,003,200 figure as had existed when Rutherford owned the property in 2006 and 2007.

Harriman did not make any initial application to intervene in the Rutherford proceedings, either as of right (*see* CPLR 1012) or by permission (*see* CPLR 1013). Moreover, it did not seek to join or consolidate the Rutherford proceedings with the Harriman proceedings (*see* CPLR 601, 602). Litigating separately, the Town settled the Rutherford proceedings, resulting in a consent judgment that was signed by the Supreme Court on May 24, 2012. Under the terms of the consent judgment, the Town reduced the assessed value of the property from $6,003,200 to $2,618,551, representing a reduction in the property's fair market value from $19,054,156 to $8,250,000. Only after the Rutherford proceedings were settled in principle and the consent judgment was awaiting the court's signature did Harriman move to intervene in those proceedings. That motion to intervene was denied as untimely.

During the first quarter of 2012, at roughly the same time that the Town was concluding its settlement with Rutherford, Harriman listed the property for sale through McBride Corporate Real Estate, with an asking price of $9,750,000. The asking price was $1,500,000 more than the property's fair mar-

ket value as calculated from the Town's settlement with Rutherford, though some of the difference may be explained by the progress Harriman had made since its purchase in remediating the property's environmental contamination.

Meanwhile, in January of 2012, in conjunction with its tax certiorari proceedings, Harriman provided a preliminary appraisal of the property prepared by Beckmann Appraisals, Inc. The Beckmann appraisal proffered by Harriman set the fair market value of the property for 2011 at only $400,000 for the six combined parcels.

Counsel for Harriman advised the Supreme Court during a conference conducted on April 20, 2012, that although he had been aware of ongoing settlement negotiations between the Town and Rutherford for a year, his repeated efforts to include Harriman in the negotiations received "no response whatsoever." Harriman's counsel recognized that any settlement between the Town and Rutherford would affect Harriman. The parties do not dispute that the reduced $2,618,551 assessment of the property achieved by Rutherford carried forward to 2008, 2009, and 2010 to the benefit of Harriman. Nevertheless, Harriman maintained that its tax certiorari proceedings for those years remained viable to the extent that the new assessment of the property, albeit reduced, was still excessive in light of Beckmann's $400,000 appraised fair market value.

On May 30, 2012, the Town moved pursuant to RPTL 727 to dismiss the petitions in the Harriman proceedings. The Town argued that when an assessment is found to be unlawful, unequal, excessive, or misclassified by a final court order or judgment, as with the consent judgment here, "the assessed valuation so determined shall not be changed for such property for the next three succeeding [annual] assessment rolls" (RPTL 727 [1]). The Town further argued that any statutory exceptions to the three-year moratorium of RPTL 727 were inapplicable to the Harriman proceedings, and that any decisional authority on which Harriman might rely, such as *Susquehanna Dev. v Assessor of City of Binghamton* (185 Misc 2d 267 [Sup Ct, Tompkins County 2000]), was distinguishable and not binding, persuasive, or controlling.

Harriman opposed the motion on various grounds. Harriman argued that the three-year bar to successive assessment reviews applied only to years not already under review, and that its tax certiorari proceedings for 2008, 2009, and 2010 were each commenced prior to the consent judgment between

Rutherford and the Town. Harriman also relied upon the *Susquehanna* decision in arguing that when there is a negotiated settlement of an assessment dispute between a taxing authority and a property owner, RPTL 727 does not impose a three-year moratorium upon subsequent challenges to the same property undertaken by a successor property owner. Harriman also presented the Supreme Court with a copy of the Beckmann appraisal, which estimated the fair market value for two of the properties' tax lots at $200,000 each ($400,000 total), and a zero market value for the remaining four lots. On that basis, Harriman argued that applying RPTL 727 to bar its 2008, 2009, and 2010 tax certiorari proceedings would be unconstitutional, since the assessed valuation exceeded the appraised fair market value of the property, which is prohibited under New York Constitution, article XVI, § 2, and otherwise violates the Equal Protection Clauses of the New York Constitution and United States Constitution.

In reply, the Town pointed out that, given the mandates of RPTL 727, Harriman could have negotiated the impact of the statute in its purchase contract, sought timely intervention in the Rutherford proceedings, or sought consolidation of the Rutherford and Harriman proceedings, but availed itself of none of these remedies.

In the order appealed from, the Supreme Court granted the Town's motion to dismiss the petitions in the Harriman proceedings. The Supreme Court distinguished the *Susquehanna* decision by reasoning that Harriman could not be viewed as a "noncomplicit transferee" with no connection to the reduction in assessment obtained by the prior owner. In this regard, the Supreme Court noted that Harriman had purchased the property with full knowledge and disclosure of the Rutherford tax certiorari proceedings but did not negotiate the purchase price to take the valuation issues into account. The Supreme Court found Harriman's constitutional challenges to be "at best unpersuasive." The Supreme Court concluded that the three-year moratorium of RPTL 727 applied, notwithstanding the sale and purchase of the property, and that Harriman did not fall within the scope of the statute's enumerated exceptions.

Harriman appeals. For the reasons set forth below, we affirm.

Analysis

██ Central to this appeal is the language, purpose, and legislative intent of RPTL 727 (1), which states, in relevant part, that

> "where an assessment being reviewed pursuant to this article is found to be unlawful, unequal, excessive or misclassified by final court order or judgment, the assessed valuation so determined shall not be changed for such property for the next three succeeding assessment rolls prepared on the basis of the three taxable status dates next occurring on or after the taxable status date of the most recent assessment under review in the proceeding subject to such final order or judgment."

The most recent assessment that was found to be excessive by final judgment was the property assessment for 2006 and 2007, as reduced from $6,003,200 to $2,618,551 in the consent judgment dated May 24, 2012. RPTL 727 (1) applies to property owners, even where, as here, the final order or judgment is entered upon stipulation of the parties (*see Matter of Wagner & Stoll, LLC v City of Schenectady*, 107 AD3d 1225, 1228-1229 [2013]; *Matter of Dresser-Rand Co. v Champlin*, 39 AD3d 1156 [2007]; *Matter of Mallinckrodt Med. v Assessor of Town of Argyle*, 292 AD2d 721, 722 [2002]; *Matter of Owens Corning v Board of Assessors of Town of Bethlehem*, 279 AD2d 118, 119-120 [2001]; *Matter of Rosen v Assessor of City of Troy*, 261 AD2d 9, 12 [1999]). The plain language of RPTL 727 (1) imposes a moratorium upon further challenges to the property's tax assessment for a three-year period which, in this instance, comprises the years 2008, 2009, and 2010. Harriman's own tax proceedings cannot qualify as the "final order or judgment" for the moratorium to be measured against, as Harriman's proceedings resulted in no judicial findings that the assessed valuations for 2008 through 2010 were "unlawful, unequal, excessive or misclassified," as expressly required by the statute (RPTL 727 [1]; *see Matter of Malta Town Ctr. I, Ltd. v Town of Malta Bd. of Assessment Review*, 3 NY3d 563, 569 [2004]).

The three-year moratorium serves a purpose that is well known to the tax certiorari bar and is easily understood. As appellate courts have previously noted, RPTL 727 prevents municipalities from increasing judicially reduced assessments in succeeding years, and likewise prevents property owners from perpetually challenging their tax assessments (*see Matter*

*of Malta Town Ctr. I, Ltd. v Town of Malta Bd. of Assessment Review*, 3 NY3d at 569; *Baldwin Research Inst., Inc. v Board of Assessment Review of Town of Amsterdam*, 66 AD3d 1304, 1305-1306 [2009]; *Matter of MRE Realty Corp. v Assessor of Town of Greenburgh*, 33 AD3d 802, 804 [2006]; *Matter of Owens Corning v Board of Assessors of Town of Bethlehem*, 279 AD2d at 120-121; *Matter of Rosen v Assessor of City of Troy*, 261 AD2d at 12; Assembly Sponsor's Mem in Support, Bill Jacket, L 1995, ch 693). All parties thereby avoid the time and expense of repeated court interventions (*see Matter of Rosen v Assessor of City of Troy*, 261 AD2d at 12). The three-year moratorium against successive property tax challenges also provides a measure of financial certainty to school districts that rely upon tax assessments when creating their annual budgets. The Governor's Memorandum included with the Bill Jacket for RPTL 727, when the statute was enacted in 1995, notes that

> "by locking in the judicially-reduced assessments on most properties for the following three tax years, the bill will spare all parties the time and expense of repeated court intervention [and provide] much-needed relief to the school districts and local governments across the State, whose finances have long been imperiled by the existing certiorari process" (Governor's Approval Mem, Bill Jacket, L 1995, ch 693 at 5).

Not surprisingly, the Board of Education of the Monroe-Woodbury Central School District intervened in the Harriman proceedings.

▉ What distinguishes these matters from many tax certiorari proceedings is the change in the property's ownership, from Rutherford to Harriman. RPTL 727 (2) sets forth certain circumstances under which property assessments may be challenged despite the three-year moratorium, mainly involving revaluations of all properties on a municipal entity's assessment rolls, physical changes to the property, zoning changes, and other recognized exceptions not relevant here (*see* RPTL 727 [2] [a]-[i]; *Matter of Malta Town Ctr. I, Ltd. v Town of Malta Bd. of Assessment Review*, 3 NY3d at 568; *Matter of Dresser-Rand Co. v Champlin*, 39 AD3d at 1156; *Matter of Colonie Plaza, Inc. v Assessor of Town of Colonie*, 15 AD3d 830, 831 [2005]; *Matter of Curtis/Palmer Hydroelectric Co. v Town of Corinth*, 306 AD2d 794, 796 [2003]; *Matter of 2 Perlman Dr., LLC v Board of Assessors of Vil. of Spring Val.*, 9 Misc 3d 382,

384 [Sup Ct, Rockland County 2005]). These recognized excep-
tions address situations where changes in circumstances defeat
the statute's purpose of locking in judicially settled assess-
ments to maintain the status quo, because the changed circum-
stances themselves upset the status quo (*see Baldwin Research
Inst., Inc. v Board of Assessment Review of Town of Amster-
dam*, 66 AD3d at 1306; *Matter of Colonie Plaza, Inc. v Assessor
of Town of Colonie*, 15 AD3d at 832).

A change in a property's ownership is not listed in the stat-
ute as an exception to the three-year moratorium of RPTL 727
(1). Under the doctrine of *expressio unius est exclusio alterius*,
the presence of exceptions in RPTL 727 (2), without inclusion
of a property sale exception among them, must be inferentially
construed as the legislature's intent not to except from the
three-year moratorium circumstances where property is sold to
a new owner (*see Trotta v Ollivier*, 91 AD3d 8, 14 [2011]; *Mat-
ter of Caspian Realty, Inc. v Zoning Bd. of Appeals of Town of
Greenburgh*, 68 AD3d 62, 71 [2009]; *Matter of Brown v New
York State Racing & Wagering Bd.*, 60 AD3d 107, 117 [2009];
*Matter of Town of Eastchester v New York State Bd. of Real
Prop. Servs.*, 23 AD3d 484, 485 [2005]; McKinney's Cons Laws
of NY, Book 1, Statutes §§ 114, 240). Logically, the sale of prop-
erty to a purchaser would not be an appropriate exception to
include within the enumerated exceptions of RPTL 727 (2), as
such an exception might encourage sales to "straw buyers" as a
means of circumventing the three-year moratorium of RPTL
727 (1) and thereby defeat the purpose of the statute.

■ In the absence of statutory language or appellate author-
ity supporting its position, Harriman relies upon the holding of
the Supreme Court, Tompkins County, in *Susquehanna Dev. v
Assessor of City of Binghamton* (185 Misc 2d 267 [2000]), for
the proposition that the moratorium of RPTL 727 cannot be
constitutionally applied against a subsequent bona fide
purchaser of property if its tax assessment exceeds the prope-
rty's fair market value. The *Susquehanna* matter involved a
mortgage default by the owner of three properties which were
the subjects of pending tax certiorari proceedings. A global
settlement of the three proceedings included a reduction in the
assessment of one of the properties from $1,675,200 to
$1,600,000, with greater assessment reductions for the other
properties. The bank took title to the properties in lieu of fore-
closure proceedings, and then resold the property with the
$1,600,000 assessment to a new owner for $400,000. The new

owner had no connection to the reduction of the property's assessment. The City of Binghamton maintained the $1,600,000 assessment, notwithstanding the property's $400,000 sale price. The owner argued that, since the assessment was greater than the property's market price, which is prohibited under New York Constitution, article XVI, § 2, the three-year moratorium of RPTL 727 could not constitutionally be applied to the new owner's tax certiorari proceeding. The Supreme Court agreed with the new property owner, finding that RPTL 727 cannot be construed "to suspend the operation of the constitutional limitation upon the real property taxing power" and that "the statute must yield to the constitutional command" (*Susquehanna Dev. v Assessor of City of Binghamton*, 185 Misc 2d at 273).

In effect, the Supreme Court in *Susquehanna* held that RPTL 727 cannot constitutionally be applied where: (1) there is a successful challenge to a property's tax assessment, (2) the same property is sold to a new owner, (3) the property's sale occurs within three years of the assessment reduction, (4) the new property owner is in no way complicit in the prior assessment reduction, and (5) the assessment unconstitutionally exceeds the fair market value of the property. The Supreme Court noted in *Susquehanna* that its holding would not vitiate the three-year moratorium of RPTL 727, as the proceeding presented "an unlikely combination of factors" that would rarely be repeated (*id.*).

Harriman maintains that the facts of these proceedings are squarely in accord with those in *Susquehanna*. While *Susquehanna* represents sound reasoning under its unique facts (*cf. Matter of Corporate Woods 11, LP v Board of Assessment Review of the Town of Colonie*, 83 AD3d 1250, 1254 [2011]), the facts here are distinguishable from those in *Susquehanna* in two crucial respects.

First, unlike the plaintiff in *Susquehanna*, Harriman could have undertaken procedural steps to participate in the negotiations between Rutherford and the Town that resulted in the property's assessment reduction from $6,003,200 to $2,618,551, but did not do so. As noted by the Supreme Court, Harriman was actually aware of the Rutherford proceedings and of settlement negotiations that lasted for approximately a year, and was aware that those proceedings could affect its pecuniary interests. Despite all of that, Harriman made no timely effort to intervene in the Rutherford proceedings or to join or consol-

idate them with its own tax certiorari proceedings. Thus, Harriman was not a "noncomplicit transferee," as it had negotiated the purchase of the property fully cognizant of the Rutherford proceedings, as demonstrated by the contract of sale, without negotiating a mechanism for adjusting the purchase price for the property to take into account those ongoing tax proceedings. Indeed, the purchase and sale agreement between Rutherford and Harriman specifically provided in paragraph 11.3 (a) that there would be no price adjustment based upon the outcome of the Rutherford proceedings. These facts prevent Harriman from establishing the fourth prong of the *Susquehanna* five-part test, that the new property owner is in no way complicit in the prior assessment reduction.

Second, the record fails to establish that the reduced $2,618,551 assessment of the property exceeds the property's fair market value so as to render the assessment unconstitutional. The assessment equates to a market value of $8,250,000, computed by dividing the assessed value by the 2007 equalization rate of 31.74%. However, during the first quarter of 2012, Harriman listed the property with a commercial real estate broker for $9,750,000, thereby undermining its claim that the assessment unconstitutionally exceeds the property's fair market value. Notably, the price of Harriman's listing was almost 25 times greater than its own $400,000 appraisal submitted in the tax certiorari proceedings.

Harriman also argues that the $2,618,551 assessment exceeds fair market value based upon the property's sale price between Rutherford and Harriman, which their purchase and sale agreement describes as a "negative value transaction." Harriman maintains that a negative value transaction requires that the property be assessed a zero value. However, the sale of the property from Rutherford to Harriman had all the indicia of a distress sale, as Rutherford was facing substantial, and perhaps prohibitive, remediation costs that warped the parties' bargaining positions and transaction price. In other words, Rutherford's distress sale is not reflective of a fair market value for the property at that time (*see Matter of Board of Water Supply of City of N.Y.*, 277 NY 452, 458-459 [1938]; *Matter of G.R.J.H., Inc. v Otis*, 79 AD3d 1488, 1490 [2010]). Therefore, Harriman failed to establish the fifth prong of the *Susquehanna* test by showing that the assessment exceeds the fair market value of the property.

Harriman's remaining contentions are without merit.

## Conclusions

For the foregoing reasons, we conclude that the Town established the applicability of the three-year moratorium of RPTL 727 (1) for the years 2008, 2009, and 2010. In response, Harriman has failed to establish entitlement to any exception to the three-year tax certiorari moratorium either statutorily under RPTL 727 (2), or constitutionally under *Susquehanna*, and on that basis, the order is affirmed.

DICKERSON, COHEN and DUFFY, JJ., concur.

Ordered that the order is affirmed, with one bill of costs payable to the respondents appearing separately and filing separate briefs.