OPINION OF THE COURT
Thomas D. Nolan, Jr., J.
In this RPTL article 7 proceeding, the petitioner has made a motion for summary judgment to reduce the 2002 assessment *620 on its shopping plaza from $9,750,000 to $7,800,000, the amount that was stipulated to in open court and later confirmed by court order in separate proceedings as the assessment for the subject property for the tax years 1998, 1999, 2000 and 2001. The order and judgment dated December 11, 2001, consistently with the on-the-record stipulation, stated, in part, that “the * * * reductions and revisions * * * are subject to the provision of Real Property Tax Law § 727 * * * [and] the assessment valuation * * * shall not be changed, subject to the provision of RPTL § 727 (2) * * * for the next three succeeding assessment rol [l]s.” The respondent cross-moves for an order to strike “all causes of action related to Real Property Tax Law § 727” and a determination that, as a matter of law, the town’s 2002 annual reassessment project under RPTL 1573 constitutes a town-wide reassessment within the meaning of RPTL 727 (2) (a).
RPTL 727 provides a period of respite during which neither the assessing municipality may change nor the owner may challenge an assessment for three years after a court-ordered assessment, whether stipulated to or not, subject to nine enumerated exceptions, one of which, relevant here, is a town-wide reassessment. (Viacom Corp. v Board of Assessors of Town of Horseheads, 295 AD2d 791 [3d Dept 2002]; Matter of Rosen v Assessor of City of Troy, 261 AD2d 9 [3d Dept 1999]; also see Matter of Owens Corning v Board of Assessors of Town of Bethlehem, 279 AD2d 118 [3d Dept 2001]; Matter of Akey v Town of Plattsburgh, 300 AD2d 871 [3d Dept 2002].) Specifically section 727 (2) (a) provides an exception when “[t]here is a revaluation or update of all real property on the assessment rolM * *
Here it is not disputed that within approximately four months of the above order, the town assessor increased the 2002 assessment by $1,950,000, a 25% increase over the stipulated to and court-approved assessment. By that fact alone, plaintiff has made a prima facie case entitling it to summary judgment, and the burden then shifts to the respondent to show one of the exceptions provided in RPTL 727 (2) applies and authorizes the change. (See Akey, supra; Matter of Benderson Dev. Co. v Town of Niskayuna, 293 AD2d 864 [3d Dept 2002].)
First, the respondent would have this court determine that, as a matter of law, a municipality’s participation in and compliance with a state aid program under RPTL 1573 constitutes a *621 town-wide reassessment contemplated by RPTL 727 (2) (a). Had the Legislature wanted to add such participation to the list of exceptions in RPTL 727 (2), it could have done so, but it has not, and it is beyond the authority of this court to add to that list of exceptions.
Moreover, RPTL 1573 authorizes the payment of state aid to a municipality to defray the expense of updating the assessment rolls and establishes certain criteria for a determination whether the municipality’s program qualifies for this state aid. The statute specifically sets forth as a criteria “annually conducting a systematic analysis of all locally assessed properties using a methodology specified in such regulations.” (RPTL 1573 [2] [b] [i] [B].) A “revaluation” or an “update” mentioned in RPTL 727 (2) is defined elsewhere at RPTL 102 (12-a) as a “systematic review of the assessments of all locally assessed properties * * * to attain compliance with the standard of assessment set forth” in RPTL 305 (2). The criteria mentioned in RPTL 1573 and the definition of “revaluation” or “update” in RPTL 727 (2) are not the same. Moreover, RPTL 1573 includes as a criteria that the municipality need only implement a local program “physically inspecting and reappraising each parcel at least once every six years” (RPTL 1573 [2] [b] [i] [D] [emphasis supplied]). In short, participation in a RPTL 1573 program is not the equivalent of a town-wide revaluation under RPTL 727 (2) (a).
The issue on this summary judgment boils down to whether the town undertook and performed a town-wide revaluation or update in 2002 of all properties in the town. It is axiomatic that on a motion for summary judgment that the court must, for the limited purpose of the motion, accept as true the allegations of fact made by the opponent to the motion, in this case, the respondent, and to give those allegations every favorable and reasonable inference in arriving at a determination whether triable issues of fact exist, resolution of which must await trial. (Wenger v Goodell, 288 AD2d 815, 817 [3d Dept 2001], lv denied 98 NY2d 605 [2002]; Boston v Dunham, 274 AD2d 708, 709 [3d Dept 2000].) In this case, the respondent has offered the affidavit of the retained attorney, not the town attorney, the affidavit of the town assessor, and the May 2002 “Guidelines for Annual Assessment” promulgated by the New York State Office of Real Property Services for the RPTL 1573 state aid program. While the affirmation of a retained attorney is of no probative value on matters outside his personal knowledge (Hasbrouck v City of Gloversville, 102 AD2d 905 [3d Dept *622 1984], affd 63 NY2d 916 [1984]), the town retained attorney concludes that “the Town has conducted a valid annual reassessment for the 2002 assessment roll consistent with state law and the guidelines of the New York State Office of Real Property Services NYSORPS * * In her affidavit, the town assessor offers that the town “has participated in the New York Office of Real Property Services’s annual reassessment program since its inception in 1999” and that “[U nder the reassessment plan, participating Towns must conduct an annual systematic analysis of all properties in the municipality * * The assessor then adds that “I analyze and reevaluate the market data and assess values of all commercial properties within the Town for each annual reassessment plan * * (Emphasis in original.)
Despite their bulk, the guidelines and application for the state aid program do not shed any light on whether the town actually engaged in a bona fide town-wide revaluation or update of all properties within its boundaries in 2002. The respondent’s submissions in opposition to this motion are remarkably devoid of any detail regarding the nature and extent of its purported town-wide revaluation or update. Strikingly lacking are such matters as the total number of assessed parcels within the town as of the 2002 tax status date; the methodology used in making any change in assessments; whether the revaluation or update was conducted in house by town staff, and if so, the number of hours devoted by the staff to this task; whether the revaluation or update was conducted by some outside contractor, and if so, what those tasks were and what the costs for such services were; what property-specific data was collected and how it was collected, analyzed and then used; what nonspecific property data was likewise collected in this task and likewise used; and most importantly, the results of the alleged revaluation or update, such as the number of properties whose assessments were changed upward or downward; the net effect of the total assessed valuation within the town; and a break down of that net upward or downward modification among commercial, residential and other property categories.
In brief, the respondent’s opposition papers simply do not offer any concrete evidence of any details of a bona fide town-wide revaluation or update undertaken prior to the increase in the assessment of the shopping plaza. That the town’s retained counsel concludes the town conducted an annual reassessment or update for the 2002 assessment roll does not make it so. The *623 issue is whether that conclusory assertion and any other evidence in the record are sufficient to create an issue of fact. It is not to be ignored that the assessor does not offer in straightforward language that she engaged, or anyone else on behalf of the town engaged, in a full scale “systematic review” of the assessments of all assessed properties within the town. The assessor offers that she analyzed, within the context of the state aid program, the market data and the assessed values of all commercial properties which, at least by inference, means that she did not do the same for all noncommercial properties. The assessor by her own testimony concedes that she did not undertake a revaluation or update of all properties within the Town of Malta prior to the change of the petitioner’s property’s assessment.
Not only has the respondent failed to establish that participation in this 2002 assessment year in a RPTL 1573 program constitutes an exception within RPTL 727 (2), it has also failed to establish by any evidence that it has conducted a town-wide revaluation or update of all properties within the town prior to changing petitioner’s 2002 assessment. Unlike the proof in Akey (supra at 872), submitted by the municipality in opposition to a motion similar to that made in this case, in which the town supervisor averred “that there was a town wide reassessment of all property in this past year” and the town assessor averred that the subject assessments “were based upon my revaluation of all real property on the [town’s] assessment rol[l] * * * on a town wide basis and not of selective parcels,” no such averments in this case have been made. No such clear cut, unambiguous assertions have been made in opposition to the plaintiff’s motion for summary judgment. The respondent has failed to adduce sufficient proof to create a genuine material issue of fact that it engaged in a town-wide revaluation or update.
Petitioner’s motion is granted and the respondent is directed to fix the 2002 assessment of petitioner’s real property at $7,800,000, the amount of the court-ordered 2001 assessment, and respondent’s cross motion is denied, each without costs.