[822 NE2d 331, 789 NYS2d 80]

In the Matter of MALTA TOWN CENTRE I, LTD., Respondent, v
TOWN OF MALTA BOARD OF ASSESSMENT REVIEW, Appellant.

Argued October 19, 2004; decided November 18, 2004

564

**POINTS OF COUNSEL**

*Tuczinski, Cavalier, Burstein & Collura, P.C.,* Albany (*Daniel G. Vincelette* of counsel), for appellant. I. Successful completion of an annual reassessment voids the three year moratorium of Real Property Tax Law § 727. (*Matter of Owens Corning v Board of Assessors,* 279 AD2d 118; *Matter of Rosen v Assessor of City of Troy,* 261 AD2d 9; *Matter of American Cyanamid Co. v Board of Assessors,* 288 AD2d 213; *Matter of Hellerstein v Assessor of Town of Islip,* 37 NY2d 1; *Matter of Sterling Estates v Board of Assessors of County of Nassau,* 66 NY2d 122.) II. Petitioner was not entitled to summary judgment as the record contradicts the court's holding that the record was "devoid of any detail" of the annual reassessment program conducted by the Town of Malta. (*Zuckerman v City of New York,* 49 NY2d 557; *Alvarez v Prospect Hosp.,* 68 NY2d 320; *Ayotte v Gervasio,* 81 NY2d 1062; *Wahila v Kerr,* 204 AD2d 935; *Wenger v Goodell,* 288 AD2d 815, 98 NY2d 605; *Empire Magnetic Imaging v Comprehensive Care of N.Y.,* 271 AD2d 472; *Matter of Akey v Town of Plattsburgh,* 300 AD2d 871; *Hasbrouck v City of Gloversville,* 102 AD2d 905.)

*Pott and Naviasky, LLP,* Schenectady (*Laurence Naviasky* of counsel), for respondent. I. The determination that an annual reassessment under RPTL 1573 is not equivalent to a revaluation or update as contemplated by RPTL 727 (2) (a) is supported by the language and intent of the respective statutes.

(*Matter of Viacom Corp. v Board of Assessors of Town of Horseheads,* 295 AD2d 791; *Matter of Owens Corning v Town of Bethlehem,* 279 AD2d 118; *Matter of Hellerstein v Assessor of Town of Islip,* 37 NY2d 1; *Matter of Rosen v Assessor of City of Troy,* 261 AD2d 9; *Matter of Chasalow v Board of Assessors of County of Nassau,* 202 AD2d 499; *People ex rel. Hagy v Lewis,* 280 NY 184; *Nash v Assessor of Town of Southhampton,* 168 AD2d 102; *Matter of Sterling Estates v Board of Assessors of County of Nassau,* 66 NY2d 122.) II. The trial court correctly held that appellant failed to submit admissible proof sufficient to create a genuine issue of fact that it engaged in a town-wide revaluation or update. (*Hedrick v Genesee Mgt.,* 246 AD2d 858; *Koppers Co. v Empire Bituminous Prods.,* 35 AD2d 906; *Ascher v Garafolo Elec. Co.,* 113 AD2d 728; *Stainless, Inc. v Employers Fire Ins. Co.,* 69 AD2d 27, 49 NY2d 924; *Matter of Akey v Town of Plattsburgh,* 300 AD2d 871; *Hasbrouck v City of Gloversville,* 102 AD2d 905, 63 NY2d 916; *Phillips v Bronx Lebanon Hosp.,* 268 AD2d 318; *Barrette v General Elec. Co.,* 144 AD2d 983.)

**OPINION OF THE COURT**

CIPARICK, J.

The issue presented by this appeal is whether proof of an annual reassessment pursuant to the state reassessment aid program under RPTL 1573 is evidence that there has been "a revaluation or update of all real property on the assessment roll" for the purposes of RPTL 727 (2) (a). We conclude that it is evidence of a revaluation or update sufficient to defeat petitioner's motion for summary judgment.

Petitioner, Town Centre, commenced a prior RPTL article 7 tax certiorari proceeding to challenge its assessments for the 1998, 1999, 2000 and 2001 tax years. In December 2001, the parties resolved the proceeding by a stipulation reducing the assessed value of the property to $7,800,000.[1] The Supreme Court order and judgment authorizing the stipulation specified that the assessed valuation of the property would remain "subject to the provisions of Real Property Tax Law § 727 . . . [and that] the assessed valuation of the subject properties shall not be changed, subject to the provisions of RPTL § 727 (2), for such properties for the next three succeeding assessment rolls." Both parties reserved all rights under section 727 to challenge future assessments.

---

1. The prior assessed value of the property was $8,375,000 for each year in question, with the exception of 1999, for which the assessed value was $8,785,000.

The Town of Malta participates in an annual real property reassessment program administered by the New York State Office of Real Property Services (ORPS). Pursuant to article 15-B of the RPTL, this program provides financial assistance to assessing units that comply with the standards set forth in the statute for the preparation of an annual assessment roll at a uniform percentage of current value. As part of the 2002 annual reassessment, the Town Assessor conducted the statutorily required analysis and all values were brought to 100% of full market value as of the January 1, 2002 valuation date.

In April 2002, the Town Assessor sent Town Centre a notice that the assessed valuation of the property had been increased to $9,750,000.[2] Town Centre then submitted a complaint to respondent Board of Assessment Review, arguing that the Town was prevented from changing the assessed value of the property for three years under RPTL 727[3] or, in the alternative, that the assessed value exceeded the fair market value of the property. The Board found Town Centre's proof insufficient to warrant a change.

Town Centre then commenced the instant article 7 tax certiorari proceeding requesting court review of the assessed valuation. Petitioner argued both that the assessment was excessive and that it was conducted in violation of section 727. In response to Town Centre's requests under the Freedom of Information Law (FOIL) (Public Officers Law § 84 *et seq.*) the Town of Malta submitted documents indicating that the Assessor may

---

**2.** The notice reflected that the property's prior assessed value was $8,375,000, rather than the stipulated value of $7,800,000.

**3.** RPTL 727 states that:

"1. Except as hereinafter provided, . . . where an assessment being reviewed pursuant to this article is found to be unlawful, unequal, excessive or misclassified by final court order or judgment, the assessed valuation so determined shall not be changed for such property for the next three succeeding assessment rolls prepared on the basis of the three taxable status dates next occurring on or after the taxable status date of the most recent assessment under review in the proceeding subject to such final order or judgment. . . .

"2. An assessment on property subject to the provisions of subdivision one of this section may be changed on an assessment roll where:

"(a) There is a revaluation or update of all real property on the assessment roll; . . .

"3. No petition for review of the assessment on such property shall be filed while the provisions of subdivision one of this section are applicable to such property" (RPTL 727).

have relied upon outdated information to ascertain the 2002 assessment value—the same information used in the earlier article 7 proceeding that established the property's market value for 1998 and 1999. Town Centre moved for summary judgment, arguing that the Assessor failed to conduct a proper revaluation or update in compliance with RPTL 727 and that the assessed value should be reduced to $7,800,000.

The Board cross-moved to strike Town Centre's section 727 causes of action. In support of its cross motion, the Board submitted the affidavit of the Town Assessor. The Assessor's affidavit indicated that she had "analyze[d] and re-evaluate[d] the market data and assessed values of *all* commercial properties within the Town." The affidavit further stated that ORPS had determined that the Town's plan "was in compliance with [the] State's annual reassessment plan." Attached as exhibits to the Assessor's affidavit were ORPS documents concerning the Board's compliance with the state annual reassessment aid program and a letter from ORPS documenting successful completion of the reassessment program. The affidavit also indicated that the Assessor consulted income questionnaires from 1995 and 1998.

Supreme Court granted Town Centre's motion, ordered the Board to reduce the assessment to $7,800,000—the stipulated amount in the earlier proceeding—and denied the Board's cross motion (*Malta Town Ctr. I, Ltd. v Town of Malta Bd. of Assessment Review*, 195 Misc 2d 619 [Sup Ct, Saratoga County 2003]). The court found the Board's motion papers insufficient to show that there had been a town-wide revaluation or update. The court also concluded that RPTL 1573's[4] annual reassessment criteria are not the equivalent of "revaluation" or "update"

---

4. RPTL 1573 provides, as relevant here, that:
"2. State assistance pursuant to subdivision one of this section shall be payable as follows for each separately assessed parcel appearing on the applicable assessment roll, excluding parcels which are wholly exempt or assessed by the state board: . . .
"(b) (i) Annual reassessment aid in the amounts specified in subparagraph (ii) of this paragraph when the state board determines that the assessing unit has maintained an equitable assessment roll. Such determination shall be made in accordance with standards established pursuant to regulations promulgated by the state board, . . . and shall be based upon criteria including but not limited to:
"(A) annually maintaining assessments at the percentage of value specified in subdivision one of this section;

under RPTL 727 (2) (a) and therefore the Town's participation in the section 1573 state aid program did not qualify as an exception under RPTL 727 (2). The Appellate Division affirmed for the reasons stated by Supreme Court (*Matter of Malta Town Ctr. I, Ltd. v Town of Malta Bd. of Assessment Review*, 2 AD3d 957 [3d Dept 2003]). This Court granted leave to appeal and we now reverse.

The Board argues that the Town's successful completion of an annual reassessment under section 1573 is sufficient to abrogate the section 727 three-year period prohibiting any change in assessed valuation. Town Centre asserts that an annual reassessment under section 1573 is something less stringent than a "revaluation or update" under section 727 (2) (a) and that the two actions are not equivalent. Town Centre further argues that the purpose behind section 727 would be defeated if successful participation in the annual reassessment program is equivalent to a revaluation or update under section 727 (2) (a).

As this is a question of statutory interpretation, we turn first to the plain language of the statutes as the best evidence of legislative intent (*see Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). Section 727 of the Real Property Tax Law provides a three-year respite from any change in the assessed valuation of property "where an assessment being reviewed pursuant to this article is found to be unlawful, unequal, excessive or misclassified by final court order or judgment" (RPTL 727 [1]; *see also* RPTL 727 [3] [prohibiting petitions for review of assessments for property subject to section 727 (1)]). The statute permits certain exceptions to this three-year grace period, most relevantly, where there has been "a revaluation or update of all real property on the assessment roll" (RPTL 727 [2] [a]).

Although section 727 does not define a "revaluation or update," the terms are defined elsewhere in the RPTL. " 'Revaluation', 'reassessment' or 'update' means a systematic review of the assessments of all locally assessed properties, valued as of the valuation date of the assessment roll containing

---

"(B) annually conducting a systematic analysis of all locally assessed properties using a methodology specified in such regulations;

"(C) annually revising assessments as necessary to maintain the stated uniform percentage of value" (RPTL 1573 [2]).

those assessments, to attain compliance with the standard of assessment set forth in [RPTL 305 (2)]"[5] (RPTL 102 [12-a]).

Legislative history indicates that one focus of the three-year respite provision was to address the situation requiring taxpayers to bring successive suits to challenge assessments that had been previously reduced by court order (*see* Governor's Approval Mem, Bill Jacket, L 1995, ch 693 [stating that "by locking in the judicially-reduced assessments on most properties for the following three tax years, the bill will spare all parties the time and expense of repeated court intervention"]). The result we reach is not contrary to that intent, as a town-wide revaluation—or reassessment—is one of the specific exceptions that allows an assessment to be changed during that three-year time period (*see* RPTL 727 [2] [a]). That exception seems to recognize that the importance of a three-year grace period is diminished if the value of the property is kept current by annual reassessments. The interest in reduced litigation contemplated by the statutory respite period must be balanced against the importance of maintaining current and equitable assessment rolls. The question before us is whether a RPTL 1573 reassessment can constitute an exception under RPTL 727. We conclude that it can.

RPTL 1573 authorizes state aid for municipalities that keep assessment rolls up to date at a uniform percentage of current market value (*see* RPTL 1573 [1] [a], [b]). The statute specifically provides that annual reassessment aid will be awarded to a municipality that keeps an "equitable assessment roll" which includes "annually conducting a systematic analysis of all locally assessed properties using a methodology specified in . . . regulations [promulgated by the state board; and] annually revising assessments as necessary to maintain the stated uniform percentage of value" (RPTL 1573 [2] [b] [i] [B]-[C]). The implementing regulation likewise defines reassessment as "a systematic analysis of the assessments of all locally assessed properties, valued as of the valuation date of the assessment roll containing those assessments to attain compliance with the statutory standard of assessment" (9 NYCRR 201-2.5 [c] [1]).

The language of these provisions makes clear that reassessment, revaluation and update have the same meaning for the

---

5. RPTL 305 (2) states that "[a]ll real property in each assessing unit shall be assessed at a uniform percentage of value (fractional assessment) . . ." (RPTL 305 [2]).

purposes of both RPTL 727 and RPTL 1573. In addition, the definition of reassessment, revaluation or update is virtually identical to a criterion for annual reassessment aid under section 1573 (*compare* "systematic review of the assessments" [RPTL 102 (12-a)] *with* "systematic analysis of all locally assessed properties" [RPTL 1573 (2) (b) (i) (B)]). This similarity further supports the conclusion that an annual reassessment under section 1573 is evidence of a revaluation or update under section 727.[6]

This interpretation is also bolstered by the legislative history. Section 102 (12-a) was amended in 1998 to establish a uniform definition for reassessment, revaluation and update (*see* Mem in Support, Bill Jacket, L 1998, ch 319). The previous version of the statute defined revaluation and update separately and did not define reassessment at all (*see* Mem in Support, Bill Jacket, L 1998, ch 319). ORPS participated in the drafting of the amended section 102 (12-a). The legislative history indicates that ORPS "determined that the consistent and efficient administration of its programs require a common understanding of what local valuation activity constitutes a reassessment for participation in or compliance with the agency's programs" (Mem in Support, Bill Jacket, L 1998, ch 319). ORPS further found that regular reassessment would help municipalities attain equity on their tax rolls (*see* Mem in Support, Bill Jacket, L 1998, ch 319).

It is thus clear from both the legislative history and the text of RPTL 102 (12-a) that the Legislature intended to provide a consistent definition of the three terms. The memorandum in support of the amendment to section 102 specifically states that the "bill would amend the definitions of revaluation and update

---

**6.** The dissent notes that the triennial aid provision of section 1573 (2) (a) specifically includes the phrase "revaluation or update" (*see* dissenting op at 574-575). In order to receive aid under that provision, however, the municipality must also reinspect and reappraise all properties in connection with the revaluation or update (*see* RPTL 1573 [2] [a]). The reinspection and reappraisal is in excess of what is required by the "revaluation or update" exception in section 727 (2) (a) (*see also Guidelines for Annual Reassessment*, New York State Office of Real Property Services, May 2002, at 6 <http://www.orps.state.ny.us/reassess/seguide.pdf>, cached at <http://www.courts.state.ny.us/reporter/webdocs/seguide.pdf> [stating that yearly reappraisal is not required for annual reassessment]). Further, although section 1573 (2) (b) (i) (B) does not contain the "revaluation or update" phrase, the purpose of the section is to provide annual *reassessment* aid. As the dissent also points out, "[r]evaluation," "reassessment" and "update" all have the same meaning under RPTL 102 (12-a) (*see* dissenting op at 575).

to incorporate the policy of [ORPS] in regard to local reassessment activity" (Mem in Support, Bill Jacket, L 1998, ch 319). The minor differences in terminology do not support the conclusion, reached by Supreme Court and affirmed by the Appellate Division, that these terms have a different meaning where the intent of the Legislature was to harmonize them.

Further, the requirements to satisfy annual reassessment under section 1573 are, if anything, more stringent than those needed to constitute a revaluation or update under section 727 (2) (a). The "systematic analysis" is only one factor that must be met (*see* RPTL 1573 [2] [b] [i] [B]). For example, the assessing unit must also demonstrate that there is a program established to reappraise and physically inspect each property at least once within a six-year period (*see* RPTL 1573 [2] [b] [i] [D]). As a result, proof that there has been "a systematic analysis of all locally assessed properties" in satisfaction of section 1573 constitutes evidence that there has been a revaluation or update under section 727 (2) (a).

Finally, the Assessor's affidavit, incorporating the ORPS documents as exhibits and stating that ORPS found the Town to be "in compliance with [the] State's annual reassessment plan," was sufficient to show compliance with section 1573 and thus, to defeat Town Centre's motion for summary judgment.[7] Contrary to the dissent's contention, since we hold that evidence of annual reassessment under section 1573 is equivalent to a "revaluation or update of all real property" under section 727 (2) (a), the Assessor's affidavit incorporating ORPS documents was indeed adequate proof that such revaluation or update occurred. That proof was not limited to a statement that the Assessor analyzed only commercial properties. The ORPS documents show the Assessor inspected all parcels (*see* dissenting op at 575). Although there has been a town-wide reassessment satisfying both section 1573 and section 727, the question as to whether the assessment value for this particular parcel was accurate is referred to Supreme Court.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.

R.S. SMITH, J. (dissenting). Real Property Tax Law § 727

---

7. To the extent Town Centre contends the Board failed to provide evidence in admissible form, that issue is apparently unpreserved as it was not specifically raised in Town Centre's reply affirmation before the trial court.

provides that, once the assessed valuation of a parcel has been challenged and a court has altered it, the new valuation is frozen for three years. An exception exists where, within those three years, "[t]here is a revaluation or update of all real property on the assessment roll" (RPTL 727 [2] [a]).

Under RPTL 1573, towns or other assessing units are entitled to financial aid when they meet certain standards of real property tax administration. There are two kinds of aid—triennial and annual. To receive triennial aid, a town must carry out "a revaluation or update that includes the reinspection and reappraisal of all locally assessed properties" (RPTL 1573 [2] [a]). Annual aid is based on a number of criteria, one of which is "annually conducting a systematic analysis of all locally assessed properties" (RPTL 1573 [2] [b] [i] [B]).

The main question here is whether a town that has met the criterion for *annual* aid specified in section 1573 (2) (b) (i) (B) automatically escapes from the three-year freeze of section 727. The majority holds that it does. I dissent, because I think this reading creates a loophole in section 727 that the Legislature did not intend and that will undermine the purpose of the statute.

The relevant language from section 727, providing both for the three-year freeze and for the exception to it, is as follows:

"1. Except as hereinafter provided . . . where an assessment being reviewed pursuant to this article is found to be unlawful, unequal, excessive or misclassified by final court order or judgment, the assessed valuation so determined shall not be changed for such property for the next three succeeding assessment rolls . . . .

"2. An assessment on property subject to the provisions of subdivision one of this section may be changed on an assessment roll where:

"(a) There is a revaluation or update of all real property on the assessment roll."

The relevant language from section 1573 (2), providing both for triennial and annual aid to assessing units, is as follows:

"State assistance . . . shall be payable as follows . . . (a) Triennial aid . . . on an assessment roll on which there has been implemented a revaluation or update that includes the reinspection and reappraisal of all locally assessed properties . . .

"(b) (i) Annual reassessment aid . . . when the state board determines that the assessing unit has maintained an equitable assessment roll. Such determination . . . shall be based upon criteria including but not limited to: . . .

"(B) annually conducting a systematic analysis of all locally assessed properties using a methodology specified in . . . regulations."

In reading these two statutes, what is most striking is the resemblance between the language used in creating an exception to the three-year freeze requirement—"a revaluation or update of all real property on the assessment roll"—and the language used in authorizing *triennial* aid: "a revaluation or update that includes the reinspection and reappraisal of all locally assessed properties." It seems obvious, and the parties to this action do not dispute, that a "revaluation or update" sufficient to obtain triennial aid is also a "revaluation or update" sufficient to nullify the three-year freeze requirement.

But here the Town contends, and the majority holds, that meeting the "systematic analysis" criterion for annual aid is also enough to nullify a three-year freeze. No one simply reading the above-quoted statutory language would readily come to that conclusion. On the contrary, it seems evident that the annual "systematic analysis of all locally assessed properties" referred to in section 1573 (2) (b) (i) (B) is something different from, and less momentous than, the "revaluation or update that includes the reinspection and reappraisal of all locally assessed properties" in section 1573 (2) (a). If that is true, it is a reasonable inference that the "systematic analysis" is also insufficient to constitute the "revaluation or update of all real property" that is required for an exception to the three-year freeze under section 727 (2) (a).

The conclusion derived from this exercise in verbal logic is also supported by a commonsense interpretation of the two statutes. The policy behind the three-year freeze in RPTL 727 (1) is obviously to provide some respite from litigation. Where a dispute over valuation has been resolved by court order, both the town and the taxpayer should be allowed to rely on that resolution for a reasonable period of time. But it would be unfair to leave the freeze in effect to the benefit (or detriment) of a recent litigant when every other taxpayer in town is being subjected to a reexamination of the value of his or her property.

The exception in section 727 (2) exists to prevent such unfairness.

It is entirely consistent with the purpose of the exception that it is triggered when a town conducts the "revaluation or update that includes the reinspection and reappraisal of all locally assessed properties" that entitles it to triennial aid from the State. Triggering the exception in this way does not greatly interfere with the effectiveness of the three-year freeze, because triennial aid, as its name implies, can be obtained no more frequently than once in three years. But if the town, by meeting one of the criteria for annual aid, automatically escapes from the freeze, then the freeze has no meaning in any town in which that criterion is met.

The majority nevertheless concludes that conducting the "systematic analysis" that is one of the criteria for annual aid is enough to trigger the exception to the freeze requirement. The main basis for the majority's conclusion is the definition section of the Real Property Tax Law, which provides (RPTL 102 [12-a]):

> " 'Revaluation', 'reassessment' or 'update' means a systematic review of the assessments of all locally assessed properties, valued as of the valuation date of the assessment roll containing those assessments, to attain compliance with the standard of assessment set forth in subdivision two of section three hundred five of this chapter."

The majority finds this language to be "virtually identical" to the criterion for annual reassessment set forth in RPTL 1573 (2) (b) (i) (B), and thus concludes that to meet that criterion automatically constitutes doing a "revaluation" or "update." I do not agree. The words of the definition section—"systematic review of the assessments of all locally assessed properties" and the words describing the annual aid criterion—"systematic analysis of all locally assessed properties"—are similar, but they are not identical or virtually so. Read in context, "review of the assessments" and "analysis" suggest different meanings; the difference is between setting out to revise the data and merely examining it. Nor is it plausible that the authors of section 1573 (2) (b) (i) (B), when they specified a "systematic analysis of all locally assessed properties," meant exactly the same thing as a "revaluation or update." If that is what they meant they could have used the words "revaluation or update"—the very words

they did use in the same statute, when they provided for triennial aid in section 1573 (2) (a).

The majority says that the legislative history of the definition section supports its interpretation. I believe it supports mine. Section 102 (12-a), defining " '[r]evaluation', 'reassessment' or 'update,' " was added to the RPTL by amendment in 1998. Nothing indicates that a purpose of the amendment was to equate the terms "revaluation" or "update" with the criterion for annual aid in section 1573 (2) (b) (i) (B). The legislative history does not mention section 1573 (2) (b) (i) (B) at all; rather, it shows that the purpose of the bill was to provide that the three words "[r]evaluation," "reassessment" and "update" all meant the same thing, and that all denoted a process designed to assure that assessments be at the same percentage of current value (Mem in Support, Bill Jacket, L 1998, ch 319). If the authors of the definition had intended to track section 1573 (2) (b) (i) (B) the language of the two sections would not be similar, but identical. I conclude from the legislative history that the similarity between section 102 (12-a) and section 1573 (2) (b) (i) (B) is essentially fortuitous.

My view that compliance with section 1573 (2) (b) (i) (B) does not constitute a "revaluation" or "update" within the meaning of section 727 (2) (a) is reinforced by the facts of this case. It seems clear that the Town of Malta here did meet the section 1573 (2) (b) (i) (B) criterion, at least in the view of the state agency that dispenses aid under section 1573. But, as Supreme Court's opinion demonstrates, the evidence submitted by the Town utterly fails to show that it performed a "revaluation or update of all real property on the assessment roll," as section 727 (2) (a) requires. The affidavit submitted by the Town Assessor conspicuously omits any assertion that, in complying with section 1573 (2) (b) (i) (B), she annually revalues, reviews or updates the values of all properties in the Town. Instead, she makes the much more limited statement: "I analyze and re-evaluate the market data and assessed values of all *commercial* properties within the Town for each annual reassessment plan" (emphasis omitted and added). It is literally true, as the majority points out, that state documents show that the Assessor "inspected all parcels"—but the majority omits to note that this was a drive-by inspection ("from the public right of way") done to collect "inventory data."

Because the Town did not perform the "revaluation or update of all real property" that would trigger the exception to the

three-year freeze requirement, I would affirm the order of the Appellate Division.

Chief Judge KAYE and Judges G.B. SMITH, ROSENBLATT, GRAFFEO and READ concur with Judge CIPARICK; Judge R.S. SMITH dissents and votes to affirm in a separate opinion.

Order reversed, etc.