# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

644

CA 12-00313

PRESENT: CENTRA, J.P., FAHEY, PERADOTTO, CARNI, AND SCONIERS, JJ.

---

NEW YORKERS FOR CONSTITUTIONAL FREEDOMS,
JASON J. MCGUIRE, DUANE R. MOTLEY AND
NATHANIEL S. LEITER, PLAINTIFFS-RESPONDENTS,

           V                              OPINION AND ORDER

NEW YORK STATE SENATE, NEW YORK STATE
DEPARTMENT OF HEALTH, DEFENDANTS-APPELLANTS,
AND ERIC T. SCHNEIDERMAN, IN HIS OFFICIAL
CAPACITY AS THE ATTORNEY GENERAL OF THE STATE
OF NEW YORK, DEFENDANT.

---

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (VICTOR PALADINO OF COUNSEL), FOR DEFENDANTS-APPELLANTS.

LIBERTY COUNSEL, LYNCHBURG, VIRGINIA (RENA M. LINDEVALDSEN OF COUNSEL), AND JOSEPH P. MILLER, CUBA, FOR PLAINTIFFS-RESPONDENTS.

---

Appeal from a judgment (denominated order) of the Supreme Court, Livingston County (Robert B. Wiggins, A.J.), entered November 18, 2011. The judgment, insofar as appealed from, denied that part of the motion of defendants to dismiss plaintiffs' first cause of action against defendants New York State Senate and New York State Department of Health.

It is hereby ORDERED that the judgment insofar as appealed from is unanimously reversed on the law without costs, and judgment is granted in favor of defendants-appellants as follows:

> It is ADJUDGED and DECLARED that defendant New York State Senate did not violate the Open Meetings Law (Public Officers Law art 7) in enacting the Marriage Equality Act (L 2011, ch 95, § 3) and that marriages performed thereunder are valid.

Opinion by FAHEY, J.: This appeal arises from the passage of the Marriage Equality Act ([MEA] L 2011, ch 95, § 3), which permits same-sex couples to marry in this state (*see* Domestic Relations Law § 10-a). Plaintiffs unsuccessfully opposed the MEA, and thereafter commenced this action to challenge the process by which it was enacted. Defendants, New York State Senate, New York State Department of Health and Eric T. Schneiderman, Attorney General, State of New York, made a pre-answer motion to dismiss the verified complaint pursuant to CPLR 3211 (a) (1) and (7), and Supreme Court granted the

motion in its entirety with respect to defendant Attorney General. The court, however, granted the motion only in part with respect to the two remaining defendants (collectively, defendants). The verified complaint's first cause of action, alleging a violation of the Open Meetings Law ([OML] Public Officers Law art 7) requiring nullification of the MEA, is the sole cause of action to have survived motion practice. In that cause of action, plaintiffs seek a declaration that the New York State Senate violated the OML in enacting the MEA and voiding any marriages performed pursuant to that act.

Defendants appeal, and in doing so bring before us none of the policy considerations relative to the MEA that lurk beneath the verified complaint in this action. Rather, our primary task on this appeal is to interpret the exemption to the OML embodied in Public Officers Law § 108 (2) (hereafter, exemption). We cannot agree with the court that the part of the exemption providing that political caucuses may invite guests to participate in their deliberations without violating the OML should be read to limit eligible guests to members of the same political party of the political caucus that issued the invitation. We thus conclude that the judgment insofar as appealed from should be reversed and that judgment should be entered declaring that the New York State Senate did not violate the OML in enacting the MEA and that marriages performed thereunder are not invalid.

We note at the outset that a motion to dismiss the complaint is not the proper procedural vehicle for the relief sought by defendants in this declaratory judgment action (*see generally Morgan v Town of W. Bloomfield*, 295 AD2d 902, 904). Inasmuch as "this is a declaratory judgment action, we treat [defendants'] motion to dismiss for failure to state a cause of action under CPLR 3211 (a) (7) as a motion for a declaration in [their] favor" (*Fekishazy v Thomson*, 204 AD2d 959, 962 n 2; *see generally* CPLR 2001).

I

As noted, this appeal arises from the passage of the MEA and the legalization of gender-neutral marriage in New York State. Legislation proposing to legalize such marriage failed in 2009, but in 2011 four Republican State Senators joined Democratic State Senators in voting for the MEA, which was signed into law by Governor Andrew Cuomo on June 24, 2011. At the time the MEA was enacted, 32 of the 62 members of the State Senate were Republicans.

Our review begins with the verified complaint, which sets forth what is characterized as the series of events that precipitated the passage of the MEA. In mid-May 2011, New York City Mayor Michael Bloomberg, a registered Independent, accompanied by New York City Council Speaker Christine Quinn, a registered Democrat, met individually with Republican State Senators to lobby on behalf of Assembly Bill A8354-2011, which provided the foundation for what ultimately became the MEA. According to the verified complaint, Mayor Bloomberg's lobbying efforts with respect to the assembly bill were not limited to May 2011. Indeed, plaintiffs allege that Mayor

Bloomberg met with the entire Republican Conference of the Senate, i.e., 32 of the 62 Senators, in a closed meeting at the New York Capitol Building on June 16, 2011 (hereafter, Bloomberg meeting).  At that meeting, Mayor Bloomberg spoke to the Republican Conference and pledged financial support for the campaigns of Republican Senators who voted in favor of the MEA.  In contrast to the access granted Mayor Bloomberg, neither plaintiff Duane R. Motley, the Senior Lobbyist with plaintiff New Yorkers for Constitutional Freedoms, nor plaintiff Nathaniel S. Leiter, the Executive Director of Torah Jews for Decency, was permitted to address the Republican Conference that day.

Similarly to Mayor Bloomberg, Governor Cuomo, a registered Democrat, lobbied on behalf of the MEA.  According to the verified complaint, Governor Cuomo met privately with Republican Senators at the Governor's mansion to advocate for the MEA (hereafter, Cuomo meeting), and that meeting was not open to the public.  The verified complaint alleges, upon information and belief, that a quorum of the State Senate was present for the Cuomo meeting, but it is unclear whether the term "quorum" refers to all of the Republican Senators, as opposed to a mix of Republican and Democratic Senators.  For purposes of this appeal, however, we assume that plaintiffs have alleged that all of the Republican Senators were present for the Cuomo meeting.

Plaintiffs do not specify a date on which the Cuomo meeting occurred, but one of the exhibits to the verified complaint suggests that it may have been held on June 20, 2011.  In the event that the Cuomo meeting was indeed held on June 20, 2011, it occurred subsequent to the Assembly's passage of the MEA on June 15, 2011, which was facilitated by a message of necessity from Governor Cuomo dispensing with the constitutionally-mandated waiting period of three days for the passage of bills (see NY Const, art III, § 14).

Once passed by the Assembly, the MEA was delivered to the Senate, and during the week of June 20, 2011 there was what Motley describes as an "unprecedented" denial of public access to the Republican Senators.  Plaintiffs allege that, on Tuesday, June 21, 2011, lobbyists and activists were locked out of the Senate lobby and that, on June 22 and 23, 2011, the Senate lobby was only partially reopened to legislative staff and lobbyists.  On Friday, June 24, 2011, the lockout resumed, thereby preventing the public from accessing the Senate lobby and the Republican side of the Senate chamber.  Moreover, the Republican Senators allegedly turned off their cell phones on June 24, 2011 and met for five hours on that date without providing for access to staff or the public.

The MEA was amended on June 24, 2011 (hereafter, Bill) to include limited protections for certain religious entities (see L 2011, ch 95, § 3), and Governor Cuomo issued messages of necessity to the Assembly and the Senate with respect to the Bill on that date, again dispensing with one of the constitutional requirements for enacting a bill into law.  The Bill, now identified as A8520-2011, passed the Assembly, and thereafter was passed by the Senate in a regular session by a vote of 33 to 29.  Governor Cuomo signed the Bill into law on June 24, 2011 at 11:15 p.m.

II

Plaintiffs commenced this action approximately one month after the MEA was enacted.  In addition to providing the basis for the foregoing factual summary, the verified complaint asserted three causes of action against defendants and defendant Attorney General. Our concern rests with the first cause of action, which alleges the violation of the OML arising from the purported conduct of business of a public body in a closed session and seeks a declaration nullifying the MEA pursuant to Public Officers Law § 107 and voiding any marriages that were performed pursuant to that act.  The second cause of action challenges Governor Cuomo's issuance of the subject messages of necessity as ultra vires, while the third cause of action alleges that defendants deprived plaintiffs of their constitutional right to freedom of speech.

As noted, in lieu of an answer defendants moved to dismiss the verified complaint pursuant to CPLR 3211 (a) (1) and (7).  The court granted the motion in its entirety with respect to defendant Attorney General and, with respect to defendants, the court dismissed only the second and third causes of action, reasoning that there is a justiciable issue whether the OML was violated, as alleged in the first cause of action.

III

Before turning to the primary issue on appeal, we briefly consider two preliminary points of far less significance.  First, "although defendant[s] purport[ ] to appeal 'from each and every part' of the [judgment], [they are] not aggrieved by those parts . . . granting [their] motion in part and thus may not appeal therefrom" (*K.J.D.E. Corp. v Hartford Fire Ins. Co.*, 89 AD3d 1531, 1532; *see Viscosi v Preferred Mut. Ins. Co.*, 87 AD3d 1307, 1307, *lv denied* 18 NY3d 802).  Put differently, defendants may appeal from the judgment only to the extent that it denied their motion (*see* CPLR 5511).

Second, defendants contend in their main brief that plaintiffs may not prosecute this case without running afoul of the Speech or Debate Clause of the State Constitution (*see* NY Const, art III, § 11). That contention, however, was not properly before the court inasmuch as it was raised for the first time in defendants' reply papers (*see Watts v Champion Home Bldrs. Co.*, 15 AD3d 850, 851).  Moreover, contrary to defendants' contention, the Speech or Debate Clause defense may be waived (*see Pataki v New York State Assembly*, 4 NY3d 75, 88), and it was waived here based on defendants' failure to raise that defense in a timely manner (*see Litvinov v Hodson*, 34 AD3d 1332, 1332-1333).  The further contention raised in defendants' reply brief on appeal that the Speech or Debate Clause defense is properly before us because it was asserted in defendants' answer is of no moment, inasmuch as the answer is outside the record on appeal (*see e.g. Palermo v Taccone*, 79 AD3d 1616, 1620).

IV

A.

We now turn to the primary issue on appeal, i.e., the interpretation of the exemption.

"The purpose of the [OML] is to prevent public bodies from debating and deciding in private matters that they are required to debate and decide in public, i.e., 'deliberations and decisions that go into the making of public policy' " (*Matter of Zehner v Board of Educ. of Jordan-Elbridge Cent. School Dist.*, 91 AD3d 1349, 1350; *see Matter of Gordon v Village of Monticello*, 87 NY2d 124, 126-127). Pursuant to Public Officers Law § 103 (a), "[e]very meeting of a public body shall be open to the general public, except that an executive session of such body may be called and business transacted thereat in accordance with section [105.]"  The OML defines a "meeting" as "the official convening of a public body for the purpose of conducting public business" (§ 102 [1]).  A "public body," in turn, is defined as "any entity, for which a quorum is required in order to conduct public business and which consists of two or more members, performing a governmental function for the state . . . or committee or subcommittee or other similar body of such public body" (§ 102 [2]). Inasmuch as the Republican Conference was the majority conference of the State Senate at all times relevant to this action, a meeting of that conference constituted a quorum of the State Senate.

"[T]he provisions of the [OML] are to be liberally construed in accordance with the statute's purposes" (*Gordon*, 87 NY2d at 127), and here we are called upon to construe the "guest" exemption, which is contained in Public Officers Law § 108 (2).[1]  "The primary

---

[1]     Public Officers Law § 108 is entitled "Exemptions," and subdivision (2) of that section provides:

> "Nothing contained in [the OML] shall be
> construed as extending the provisions hereof
> to:
>
> . . .
>
> "2.   a.   deliberations of political
>       committees, conferences and caucuses.
>
>       b.   for purposes of this section,
>       the deliberations of political
>       committees, conferences and
>       caucuses means a private meeting of
>       members of the senate or assembly
>       of the state of New York, or of the
>       legislative body of a county, city,
>       town or village, who are members or
>       adherents of the same political

consideration of courts in interpreting a statute is to 'ascertain and give effect to the intention of the Legislature' " (*Riley v County of Broome*, 95 NY2d 455, 463, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a], at 177; *see Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660), and " 'we turn first to the plain language of the statute[] as the best evidence of legislative intent' " (*Matter of Stateway Plaza Shopping Ctr. v Assessor of City of Watertown*, 87 AD3d 1359, 1361, quoting *Matter of Malta Town Ctr. I, Ltd. v Town of Malta Bd. of Assessment Review*, 3 NY3d 563, 568).  Our concern in determining whether the exemption applies to the Bloomberg and Cuomo meetings lies in section 108 (2) (b), and we turn to what we characterize as the "first part" of that subdivision, which provides that, for purposes of section 108,

> "the deliberations of political committees, conferences and caucuses means a private meeting of members of the senate or assembly of the state of New York, or of the legislative body of a county, city, town or village, *who are members or adherents of the same political party*" (emphasis added).

The inclusion of the emphasized language in the preceding quote qualifies the political committees, conferences and caucuses (collectively, caucuses) that are exempt from the provisions of the OML, and limits the exempt caucuses to those comprised of members of the same political party.  Put differently and by way of example, under section 108 (2) (b), the Puerto Rican/Latino Caucus of the State Senate would not be entitled to the benefit of the exemption to the extent that the Caucus is comprised of members of different political parties, nor would the Legislative Women's Caucus of New York State qualify for the exemption were it comprised of members of varying political parties from one house of the Legislature.  Rather, the only caucuses to which the exemption applies are those comprised of members of the same political party, and that limitation arises from the Legislature's inclusion of language restricting eligible caucuses to only those private meetings of "members . . . of the same political party."

What we characterize as the "second part" of section 108 (2) (b)

---

> party, without regard to (i) the subject matter under discussion, including discussions of public business, (ii) the majority or minority status of such political committees, conferences and caucuses or (iii) whether such political committees, conferences and caucuses invite staff or guests to participate in their deliberations."

enhances the exemption articulated in the "first part" of that statute.  In the second part of section 108 (2) (b), the Legislature noted that the exemption applies

> "without regard to (i) the subject matter under discussion, including discussions of public business, (ii) the majority or minority status of such political committees, conferences and caucuses or (iii) whether such political committees, conferences and caucuses invite staff or guests to participate in their deliberations."

We now turn to clause (iii) of the foregoing excerpt, i.e., the provision that the exemption applies without regard to whether the caucuses invite staff or guests to participate in their deliberations. The term "guests" brings us to the critical juncture of this issue: whether plaintiffs are correct that the definition of "guests" in the exemption must be limited to people of the same political party as those of the political caucus seeking the exemption, and thus whether the attendance of Mayor Bloomberg and Governor Cuomo, respectively, at the Bloomberg and Cuomo meetings removed those meetings from the protection of the exemption because neither Mayor Bloomberg nor Governor Cuomo is a registered Republican.

We conclude that the plain language of the statute does not support plaintiffs' position.  " 'The language of a statute is generally construed according to its natural and most obvious sense . . . in accordance with its ordinary and accepted meaning, unless the Legislature by definition or from the rest of the context of the statute provides a special meaning' " (*Samiento v World Yacht Inc.*, 10 NY3d 70, 78, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 94, at 191-194 [1971 ed]).  A "guest" as defined by both legal and non-legal dictionaries is "[a] person who is entertained or to whom hospitality is extended" (Black's Law Dictionary 776 [9th ed 2009]; *see* New Oxford American Dictionary 772 [3d ed 2010] [defining "guest" as "a person who is invited to . . . take part in a function organized by another"]).

Had the Legislature intended to constrict the meaning of "guest" as plaintiffs suggest, it could have done so through the same means by which it limited the definition of caucuses eligible for the exemption.  Eligible caucuses include only those comprised of "adherents of the same political party" (Public Officers Law § 108 [2] [b]), and there is no such limitation on the scope of eligible guests. In view of the fact that the Legislature qualified those caucuses eligible for the exemption, the absence of qualification of "guests" eligible to participate in an eligible caucus is telling of the Legislature's intent as to the scope of the term "guests."  To conclude otherwise would impermissibly amend the "statute by adding words that are not there" (*American Tr. Ins. Co. v Sartor*, 3 NY3d 71, 76).

The only case that we could locate on this issue is *Warren v Giambra* (12 Misc 3d 650 [Sup Ct, Erie County 2006]).  There, Supreme

Court concluded that a private assembly of the Democratic majority of the County Legislature was not an exempt political caucus within the meaning of section 108 (2) (b) given the presence of the Republican Erie County Executive at that meeting (*Warren*, 12 Misc 3d at 654). For the reasons set forth above, we do not agree with that interpretation of the exemption.

Indeed, notwithstanding the absence of controlling authority on this issue, the broad construction of "guests" that we perceive the Legislature as having employed is eminently practical. Plaintiffs contend that "guests more properly would apply to topical or strategic experts from whom the caucus seeks input in order to decide how to act on public business." There is, however, no basis in the statute for reading that subtlety into the definition of "guests," and that artificial distinction drawn by plaintiffs exposes certain issues arising from their proposed construction of the exemption. For example, in the event that we were to adopt plaintiffs' limited definition of "guests," it would be impossible for a Democratic member of a Governor's office, such as a budget director, to speak to a majority Republican caucus. Moreover, assuming that the limitations plaintiffs seek to impose on "guests" under section 108 (2) (b) would apply equally to "staff" under that statute, we question whether all Senators in the majority conference would be entitled to have their staff members attend a caucus. By way of example, if a Republican Senator employs a chief of staff who is a registered Conservative, or if a Democratic Assembly Member employs a chief of staff who is a registered Independent, those chiefs of staff could no longer attend a majority conference.

We next turn to the legislative history of section 108 (2) (b), which also does not support plaintiffs' suggested interpretation of "guests" within the meaning of the subject exemption.

> "Despite the primary importance of literal
> construction, we [have] recognize[d] that '[t]he
> courts may in a proper case indulge in a departure
> from literal construction and . . . sustain the
> legislative intention although it is contrary to
> the literal letter of the statute' (Statutes §
> 111). Thus, 'the legislative history of an
> enactment may also be relevant and "is not to be
> ignored, even if words be clear" ' " (*Feher
> Rubbish Removal, Inc. v New York State Dept. of
> Labor, Bur. of Pub. Works*, 28 AD3d 1, 5, *lv denied*
> 6 NY3d 711; *see Matter of Tompkins County Support
> Collection Unit v Chamberlin*, 99 NY2d 328, 335).

The Legislative Declaration (Declaration) accompanying the 1985 amendments to the Public Officers Law that added subdivision (b) to Public Officers Law § 108 (2) (*see* L 1985, ch 136, § 1) does not cause us to retreat from our conclusion that the Legislature did not intend that the definition of "guests" in the exemption be limited to people of the same political party as that of the political caucus seeking

the exemption.[2]  Although the Declaration refers to discussions "among members of each political party," read as a whole the Declaration speaks to discussions *within public bodies*.  Indeed, nothing therein suggests that members of a political caucus cannot entertain a guest from a different political party provided that the guest is not a member of the public body from which the caucus is formed.

Finally, at least with respect to the issue whether the Bloomberg and Cuomo meetings violated the OML, we reject what we interpret as plaintiffs' contention that the OML was violated insofar as the Republican Senate majority conducted public business during private conferences at which "Republican Senators were pressured to change

---

[2]     The Declaration provides, in relevant part:

"The legislature hereby reaffirms that the public business of public bodies of the state of New York should generally be conducted at open and public meetings . . . When enacting the [OML], the legislature intended and provided that the 'deliberations of political committees, conferences, and caucuses' should be exempt from the coverage of such law. Such exemption was enacted in furtherance of the legislature's recognition that the public interest is well served by the political party system in legislative bodies because such parties serve as mediating institutions between disparate interest groups and government and promote continuity, stability and orderliness in government.  The performance of this function requires the private, candid exchange of ideas and points of view among members of each political party concerning the public business to come before the legislative bodies.  Recent judicial decisions have, however, eroded this exemption by holding that it applied only to discussions of political business. Accordingly, the legislature hereby declares its adherence to the original intent of the legislature, that the provisions of the [OML] are not applicable to the deliberations of political committees, conferences and caucuses of legislative bodies regardless of (i) the subject matter under discussion, including discussions of public business, (ii) the majority or minority status of such political committees, conferences and caucuses or (iii) whether such political committees, conferences and caucuses invite staff or guests to participate in their deliberations" (L 1985, ch 136, § 1).

their vote."  Public Officers Law § 108 (2) (b) protects the
*discussion* of public business at a political caucus, but not the
*conduct* of public business at such a meeting (*see Matter of Humphrey v
Posluszny*, 175 AD2d 587, 588, *appeal dismissed* 78 NY2d 1072).  As we
read the verified complaint, however, plaintiffs challenge the
*lobbying* of the MEA at the Bloomberg and Cuomo meetings.  Nowhere does
the verified complaint allege that the Republican Conference agreed to
pass the MEA at those meetings, nor does the verified complaint allege
that the Republican Conference essentially arranged for a close vote
on the MEA by issuing four of its Senators a "pass" to support that
legislation.

B.

Even assuming, arguendo, that the Bloomberg and Cuomo meetings
violated the OML, we would not invalidate the MEA and the marriages
performed thereunder.

Public Officers Law § 107 (1) provides in relevant part that,
when a court determines that a public body failed to comply with the
OML, "the court shall have the power, in its discretion, upon good
cause shown, to declare that the public body violated [the OML] and/or
declare the action taken in relation to such violation void, in whole
or in part . . . ."  The burden of showing good cause warranting
judicial relief based on an OML violation rests with the challenger
(*see Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668,
686), and here plaintiffs have not made the requisite showing of good
cause for the relief they seek.  Plaintiffs' contentions on this point
distill to claims of prejudice arising from the mere fact of the OML
violations, and from the changes in the law that followed the passage
of the MEA.  Plaintiffs do not, however, contend that the alleged OML
violations were the catalyst for the passage of the MEA.  In fact, the
various news articles attached as exhibits to the verified complaint
detail the intense lobbying of *individual* Senators with respect to the
MEA, and note that both proponents and opponents of the Bill took a
similar approach of targeting potential swing votes on the issue.
There is no allegation that the lobbying of individual Senators
violated the OML and, given their failure to link the alleged OML
violations to the enactment of the MEA, which was approved at a
regular session of the Senate that was open to the public, we conclude
that plaintiffs failed to show good cause why we should exercise our
discretion to nullify the MEA (*see Matter of Malone Parachute Club v
Town of Malone*, 197 AD2d 120, 124; *cf. Matter of Goetschius v Board of
Educ. of the Greenburgh Eleven Union Free School Dist.*, 244 AD2d 552,
553-554; *see also Matter of Griswald v Village of Penn Yan*, 244 AD2d
950, 951; *Town of Moriah v Cole-Layer-Trumble Co.*, 200 AD2d 879, 881).

V

Accordingly, we conclude that the judgment should be reversed
insofar as appealed from, and judgment should be entered in favor of
defendants declaring that defendant New York State Senate did not
violate the OML in enacting the MEA and that marriages performed

thereunder are valid.

Entered:  July 6, 2012                                    Frances E. Cafarell
                                                         Clerk of the Court