*787 OPINION OF THE COURT
James P. Gilpatric, J.
In March 2013, in this medical malpractice action, a jury rendered a verdict on the issues of liability and damages in favor of plaintiff Mark R. Boyer and against defendant Radio-logic Associates, P.C. (RAPC). Following posttrial motion practice, in a decision and order dated July 1, 2013, this court, in part, concluded that Orange Regional Medical Center (ORMC) was vicariously liable for RAPC’s negligence and also reduced the amount of the jury’s damage award to plaintiff for loss of past wages. Plaintiff now moves pursuant to CPLR article 50-A for a final judgment in his favor and as against RAPC and ORMC (collectively, defendants). Defendants oppose the motion, seeking a hearing as to the final amount of the judgment.
The jury awarded plaintiff $2,003,200 in damages as broken down and subsequently reduced by the court as follows: $5,200 past medical costs; $48,000 past lost wages; $600,000 past pain and suffering; $450,000 future lost wages for 7x/2 years; and $900,000 future pain and suffering for 22 years. Plaintiff now seeks a final judgment of $1,874,916, which he argues represents the present day value of his damages; $1,290 in costs and disbursements; and interest at the statutory rate of 9% per annum from March 22, 2013 until the judgment is satisfied. Further, plaintiffs expert averred:
“Based upon a review of the plaintiffs 2005, 2006, and 2007 federal and state income tax returns and the Federal and New York State Income tax schedules^] I determined that 21% of the past and future lost wage component of plaintiffs damages represents the amount of tax which would have been paid by plaintiff upon the wages he was found to have lost. I then deducted the amount of lost wages from the lost wage component as awarded to plaintiff” (Kucsma aff ¶ 5).
In opposing plaintiffs motion, defendants’ sole contention is that the tax rate used by plaintiff’s expert to calculate the amount of taxes that would have been deducted from plaintiff s wages is incorrect, submitting their own expert’s opinion that the tax rate should be 28%. Defendants contend that, pursuant to CPLR 4546, any award for lost wages must be reduced by the amount of federal, state, and local income tax that a plaintiff would have had to have paid on such wages. Thus, defendants’ expert explains that, in calculating the tax rate, plaintiff failed *788 to take into account the 7% deduction for Federal Insurance Contributions Act (FICA) tax that plaintiff would have deducted from his wages. Defendants’ expert opines:
“The intent of [CPLR 4546] is that the plaintiff will not receive, or benefit from, moneys that had he continued to work would have gone to the government. ie [sic] the principle is to compensate only for net loss after taxes. . . .
“Although it is occasionally referred to as a contribution, FICA is in effect a tax and is generally termed that. It is money the federal government takes out and should be excluded from the settlement. It is not optional it is an obligation. It is levied upon the person (not on an estate or corporate entity) and is pro-rated by income. To all intents and purposes, it is a personal income tax” (Kennett aff, exhibit A [Kennett report] at 2).
Accordingly, defendants argue that, by applying a 28% tax rate, the present day value of the damage award would be $1,842,962 or $31,954 less than plaintiff argues is the present day value of the award.
“Under CPLR 4546, an award for loss of earnings in a medical malpractice action must be reduced by the amount of Federal, State, and local personal income taxes that the court finds, with reasonable certainty, that the plaintiff would have been obligated by law to pay” (Cabrera v New York City Health & Hosps. Corp., 272 AD2d 495, 496 [2d Dept 2000], citing CPLR 4546 [1], [2]). As one commentator on this statute explains:
“In 1986, CPLR 4546 was adopted in response to the perceived medical malpractice insurance crisis. The statute represents a legislative determination that damage awards for lost earnings in medical, dental and podiatric malpractice actions should reflect economic reality, i.e., that projections of future earnings should be reduced by the amount of income tax that would be imposed on such earnings.” (Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 4546 at 839.)
In addition, the burden of proof for establishing the amount of taxes that a plaintiff would be obligated by law to pay rests with a defendant (see id., citing Oden v Chemung County Indus. Dev. Agency, 87 NY2d 81, 89 [1995]).
Defendants have not offered nor has the court’s own research revealed any legal authority for defendants’ position that FICA *789 should be considered a “personal income tax” as referenced in CPLR 4546. Thus, the court must look to the provision itself to resolve the central issue in this matter — that is, whether FICA is considered a “personal income tax” to come under the purview of CPLR 4546.* Generally, “[t]he primary consideration of courts in interpreting a statute is to ascertain and give effect to the intention of the Legislature” (Riley v County of Broome, 95 NY2d 455, 463 [2000] [internal quotation marks and citation omitted]). The best evidence of the legislature’s intent is the words of the statute (see id.; Matter of Theroux v Reilly, 1 NY3d 232, 239 [2003]; Matter of Malta Town Ctr. I, Ltd. v Town of Malta Bd. of Assessment Review, 3 NY3d 563, 568 [2004]).
Black’s Law Dictionary defines “income tax” as a “tax on an individual’s . . . net income,” further explaining that “federal income tax — governed by the Internal Revenue Code — is the federal government’s primary source of revenue” (Black’s Law Dictionary 1470 [7th ed 1999]). On the other hand, FICA is a “Federal law establishing the Social Security system which is funded by a tax on income, up to a specified ceiling” (Modern Dictionary for the Legal Profession [3d ed 2001], Federal Insurance Contributions Act [online treatise]). “Under FICA, both employees and employers must pay tax on wages to fund Social Security and Medicare” (United States v Cleveland Indians Baseball Co., 532 US 200, 205 [2001]). In turn, a person becomes eligible to receive Social Security and Medicare benefits based upon “the number of calendar-year ‘quarters of coverage’ accumulated by an individual” (id. at 211).
In reviewing the above, the FICA tax appears to have a differing purpose from that of federal personal income tax. For instance, when an individual pays his or her federal “personal income tax,” the money is helping to raise revenue for the federal, state or local government. That individual does not reap a benefit different from nor does any other citizen from the payment of personal income taxes. However, the payment of the FICA tax is directed toward a benefit program, from which the employee may, at some point, draw based upon the amount of credit or quarters he or she has accumulated. Thus, to some degree, the employee benefits from his or her contribution to FICA. Furthermore, both the individual and the individual’s employer must contribute to FICA. Thus, FICA appears to be a *790 Social Security tax and not a personal income tax (see generally United States v Cleveland Indians Baseball Co., 532 US at 204 [characterizing FICA as an “excise tax”]; Black’s Law Dictionary 627 [7th ed 1999] [characterizing it as a “social-security tax”]).
Here, CPLR 4546 (3) clearly calls for the reduction of a loss of earnings award by the amount of federal, state, or local personal income tax which a plaintiff would have reasonably had to pay. CPLR 4546 (3) does not mention FICA (compare Domestic Relations Law § 240 [1-b]). Accordingly, strictly construing CPLR 4546, as it must, the court concludes that defendants’ argument that FICA should be included in the amount that plaintiffs loss of wages damage award is reduced is unavailing. In other words, had the legislature wanted loss of earnings or wages awards to be further reduced by FICA, it could have added that language to CPLR 4546. Thus, simply stated, CPLR 4546 only allows an award for loss of wages/earnings to be reduced by personal income tax and FICA is not strictly such a tax.
Further, to reduce plaintiffs loss of wages award by another 7% would be unjust. As noted above, when an employee pays the required FICA tax, he or she is also earning credits or quarters to help with his or her eligibility for Social Security and Medicare benefits. Here, should the 7% be deducted, plaintiff would not earn such credits toward any future Social Security or Medicare benefits. Instead, defendants would be the ones that benefit by paying a reduced loss of wages award.
In sum, defendants have not established that the tax rate used by plaintiffs expert was incorrect. Thus, the court grants plaintiffs motion for a final judgment in this medical malpractice action.
Therefore, it is ordered that plaintiffs motion is granted and the final judgment submitted with plaintiffs motion is signed simultaneously herewith.

 Here, a hearing, as requested by defendants, is unnecessary since there are no factual issues to be resolved but only a legal issue for the court to decide (see e.g. Omahen v Omahen, 309 AD2d 1019, 1020 [3d Dept 2003]).