People v Santos (2025 NY Slip Op 01008)

People v Santos

2025 NY Slip Op 01008 [44 NY3d 928]

February 20, 2025

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, October 8, 2025

[*1]

The People of the State of New York, Respondent,
v
Juan M. Silva Santos, Appellant.

Argued January 9, 2025; decided February 20, 2025

PROCEDURAL SUMMARY

Appeal, by permission of the Chief Judge of the Court of Appeals, from an order of the Appellate Division of the Supreme Court in the First Judicial Department, entered October 19, 2023. The Appellate Division affirmed a judgment of the Supreme Court, New York County (Kate Paek, J.), which had convicted defendant, upon a plea of guilty, of criminal possession of a controlled substance in the third degree.

People v Santos, 220 AD3d 547, affirmed.

HEADNOTE

Crimes
 - Plea of Guilty
 - Waiver of Right to Apply to Shock Incarceration Program

In a criminal prosecution, defendant's waiver agreeing not to apply to the Department of Corrections and Community Supervision (DOCCS) for enrollment in its shock incarceration program executed as part of his plea agreement was not a component of his sentence. Neither the waiver nor the notation in the uniform sentence and commitment directed DOCCS to impose a particular form of punishment or prohibited DOCCS from calculating defendant's sentence in a particular manner. Moreover, the effect of the waiver on the duration of the sentence was speculative inasmuch as it depended on defendant otherwise choosing to apply for the revocable "privilege" of participating in the shock program, DOCCS exercising its discretion to approve the application, and defendant successfully completing the program. The fact that the waiver was noted in the uniform sentence and commitment did not necessarily make it a component of the sentence.
APPEARANCES OF COUNSEL

Jenay Nurse Guilford, Center for Appellate Litigation, New York City (Elizabeth Vasily and David Klem of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York City (Andrew E. Seewald, Steven C. Wu and Alan Gadlin of counsel), for respondent.

{**44 NY3d at 929} OPINION OF THE COURT

Memorandum.
The Appellate Division order should be affirmed.
Charged with two counts of operating as a major trafficker, a class A-I felony (Penal Law § 220.77 [1]-[2]), defendant accepted a plea bargain under which he pleaded guilty to criminal possession of a controlled substance in the third degree, a class B felony (Penal Law § 220.16 [1]), and executed a waiver agreeing not to apply to the Department of Corrections and Community Supervision (DOCCS) for enrollment in its shock incarceration program (Correction Law art 26-a). At sentencing, defendant asked Supreme Court to enroll him in "a shock program or something" but acknowledged that he "had turned it down" by executing the waiver. Although defendant could have asked to withdraw his plea, he did not do so, and he does not seek vacatur of the plea on this appeal. The court denied defendant's request to be enrolled in shock incarceration and imposed the agreed-upon sentence, consisting of a lawful determinate term of incarceration of nine years and a period of postrelease supervision of two years. In the uniform sentence and commitment, the court noted defendant's "waiver of shock program participation."
Defendant's sole contention on appeal is that the shock waiver is an illegal component of the sentence. We reject that contention on the ground that the waiver is not a component of the sentence (see People v Nieves, 2 NY3d 310, 316-317 [2004]). Neither the waiver nor the notation in the uniform sentence and commitment directs DOCCS to [*2]impose a particular form of punishment or prohibits DOCCS from calculating defendant's sentence in a particular manner. Moreover, the effect of the waiver on the duration of the sentence is speculative inasmuch as it depends on defendant otherwise choosing to apply for the revocable "privilege" of participating in the shock program, DOCCS exercising its discretion to approve the application, and defendant successfully completing the program ({**44 NY3d at 930}Correction Law § 867 [2], [4]-[5]). Contrary to defendant's insistence, the fact that the waiver is noted in the uniform sentence and commitment does not necessarily make it a component of the sentence (see People v Buyund, 37 NY3d 532, 537-539 [2021] [concluding that sex offender certification is not a component of the sentence]; People v Guerrero, 12 NY3d 45, 47 [2009] [same for certain surcharges and fees]; Nieves, 2 NY3d at 316 [same for orders of protection]).
While we appreciate our dissenting colleagues' advocacy for the shock incarceration program, we reject their attempt to reformulate defendant's contention, which is expressly a challenge to "the legality of the sentence—that is, one including a prohibition on [defendant's] access to" the shock incarceration program (brief for appellant at 2; see also id. at 16 ["(The) Sentence Was Illegal Because It Contained an Illegal Shock Waiver"]). Defendant explains that he presents his argument in this manner because a challenge to the legality of a sentence "is a non-waivable question of law immune from preservation requirements" (id. at 2; see also reply brief for appellant at 4-5 ["defendant cannot waive the right to challenge the unlawful sentence here," i.e., the shock waiver, "any more than he can 'waive' the right to challenge the unlawful length of a sentence"]). We respectfully disagree with the dissent's conclusion that whether the waiver is a component of the sentence is irrelevant to that question.

Chief Judge Wilson (dissenting).
As detailed in section III below, in 1987 the legislature provided the Department of Corrections and Community Supervision (DOCCS) with the Shock Incarceration program as an important tool to reduce recidivism and avoid the costs of incarceration. Shock is a six-month discipline and treatment-oriented program selectively administered to qualifying incarcerated persons selected by DOCCS when they are approximately three years away from the end of their prison sentence (see Correction Law §§ 867, 865). It has proved wildly successful on both the crime prevention and cost reduction fronts. In this case, the plea offer made by the People to Mr. Silva Santos required him to waive participation in Shock. He told the sentencing court that he wished to be able to participate in Shock, and the court refused, citing the terms of the waiver of Shock in the plea agreement. The sole question on appeal is whether including the Shock waiver as part of the plea agreement is contrary to statutory authority or public policy.{**44 NY3d at 931}
[*3]
The majority holds that "the [Shock] waiver is not a component of the sentence" (majority mem at &mdash). The majority then rejects Mr. Silva Santos's request for Shock eligibility and affirms the court's reliance on the waiver because he "could have asked to withdraw his plea [but] did not do so, and he does not seek vacatur of the plea on this appeal" (id. at &mdash). But if the Shock waiver is not part of the sentence, Mr. Silva Santos would have no reason to challenge the sentence, and no need to challenge it to object to the Shock waiver, which is all he challenged in the sentencing court. The majority implies that the question of whether the Shock waiver was part of his sentence is relevant because "a challenge to the legality of a sentence 'is a non-waivable question of law immune from preservation requirements' " (majority mem at — see e.g. People v Nieves, 2 NY3d 310, 315 [2004]). But if, as the majority holds, it is not part of his sentence at all, that doctrine is irrelevant, and Mr. Silva Santos preserved his challenge to the waiver's validity when he asked the court to be placed in Shock, and the court refused to do so based on the waiver. Even putting that aside, this Court can (and has a duty to) evaluate the validity of a waiver contained in a plea bargain when that waiver implicates "a public policy consideration that transcends the individual concerns of a particular defendant" (People v Muniz, 91 NY2d 570, 574 [1998]).
The public policy consideration at issue in this case, which the majority entirely fails to address, is whether it is consistent with public policy to allow a defendant to waive future participation in a treatment program, thus disabling DOCCS from using a statutorily granted tool to reduce recidivism and save the public fisc. Allowing defendants to waive Shock runs contrary to public policy favoring rehabilitation. It also contradicts the legislature's clear intent to expand access to rehabilitative programming for incarcerated individuals and to delegate decisions on Shock program participation to DOCCS. If the legislature had intended to allow district attorneys to render certain persons ineligible for Shock, it could have stated so. Instead, after two decades of experience with Shock, the legislature amended it to make it available to defendants in a second way: by court order even where DOCCS may not have decided to grant it.
I.
Mr. Silva Santos was indicted on charges including major drug trafficking, conspiracy, and criminal possession of controlled{**44 NY3d at 932} substances. In exchange for a plea to criminal possession in the third degree, he received a sentence of nine years in prison, plus two years of postrelease supervision. As part of his plea, he also signed a waiver stating the following:
"As a condition of pleading guilty, I hereby waive participation in the Shock Incarceration Program ('the Program') and agree not to apply for participation in the Program at any time during my incarceration with the New York State Department of Corrections and Community Supervision. I knowingly and freely waive participation in the Program in exchange for a reduced plea that I have agreed to accept."
The Shock program is a six-month, bootcamp-style program that includes "rigorous physical activity, intensive regimentation and discipline and rehabilitation therapy and programming" (Correction Law § 865 [2]). Eligibility is set by statute, and individuals convicted of certain offenses are ineligible to participate (§ 865 [1]). Others become eligible when less than three years remain on their sentence, at which point they must apply and be selected by DOCCS (§ 867 [1]-[2]). Eligible inmates can apply within three years of their earliest release date, and successful [*4]completion of the program makes them eligible for early release (Correction Law § 867 [4]; see § 805).
During sentencing proceedings, Mr. Silva Santos addressed the court personally. He expressed remorse and asked for compassion given that he was a first-time offender, that he had struggled with substance abuse, and that he and his wife had a young daughter who had been born with severe autism. Mr. Silva Santos specifically requested "a shock program," though acknowledged that he "had turned it down." The court explained that it was sympathetic to Mr. Silva Santos's circumstances and need for treatment, but "unfortunately" was bound by the People's offer. The court told Mr. Silva Santos that because a "condition of the People's offer was that you waive shock . . . I cannot offer you a program at this time. I wish I could, but I can't."
On appeal to the First Department, Mr. Silva Santos argued that the "waiver of his right to participate in, and apply to, the shock incarceration program runs afoul of public policy and infringes upon the Department of Correction[s'] statutorily authorized role in determining conditions of confinement" (220 AD3d 547, 547 [1st Dept 2023]). The First Department rejected his argument as "unavailing," without further elaboration (id.).
{**44 NY3d at 933}
II.
The question on appeal is whether the waiver of Shock in a plea agreement is against public policy and therefore unenforceable. The majority leaves that question for another day by addressing an irrelevant question: whether the condition that Mr. Silva Santos not apply to Shock was a component of his sentence (see majority mem at &mdash). The majority implies, though does not explicitly state, that that question is relevant because, if the waiver was not part of his sentence, Mr. Silva Santos would have been required to preserve his objection to it. Again, there is no preservation issue here. Mr. Silva Santos preserved his objection to the Shock waiver by telling the court at sentencing he wanted to be eligible for Shock. If the Shock waiver is part of the sentence, Mr. Silva Santos need not have preserved an objection to it as an illegal sentence, and if it is not part of the sentence, as the majority holds, Mr. Silva Santos's direct request for Shock eligibility despite the waiver and the court's denial resting on the validity of the waiver fully preserves the challenge to the waiver (not to the sentence, which Mr. Silva Santos has plainly stated he is not challenging). That exchange squarely raised the question of whether the waiver was valid, or if there was some constitutional defect or public policy barrier to enforcing it.
Regardless of whether the waiver of Shock is part of a sentence, it may nevertheless be violative of public policy. Whatever its form, a waiver may be challenged as unlawful. "[W]hen there is no constitutional or statutory mandate and no public policy prohibiting it, an accused may waive any right which he or she enjoys" (People v Seaberg, 74 NY2d 1, 7 [1989] [emphasis added], citing Schick v United States, 195 US 65, 75 [1904]). However, a waiver should not be enforced when it implicates "a public policy consideration that transcends the individual concerns of a particular defendant" (People v Muniz, 91 NY2d 570, 574 [1998]). We have held that defendants cannot, for example, waive the right to a speedy trial (People v Blakley, 34 NY2d 311, 313 [1974]), the right to challenge an illegal sentence, the right to challenge competency to stand trial (People v Armlin, 37 NY2d 167 [1975]), or, under certain circumstances, the right to appellate review (see e.g. People v Bradshaw, 18 NY3d 257, 265 [2011] [waiver invalid where record was insufficient to establish defendant understood the contents of the written appeal waiver form]; see also People v Billingslea, 6 NY3d 248, 257 [2006];{**44 NY3d at 934} People v Thomas, 34 NY3d 545, 565 [2019] [waivers invalid where courts gave inaccurate descriptions of the rights waived]).
[*5]The appeal waiver example is illustrative. We have held that the right to appeal may be waived as a condition of a sentence or plea bargain "provided that the waiver was voluntarily made and no important public policies or social interests are implicated" (People v Callahan, 80 NY2d 273, 278 [1992]). The availability of an appeal implicates a defendant's constitutional rights (id. at 284 ["the duty of the Appellate Division 'to entertain all appeals from final judgments in criminal cases' is of constitutional dimension" (citing NY Const, art VI, § 4 [k])]; see also Garza v Idaho, 586 US 232 [2019]). However, when we review whether a negotiated appeal waiver should be given effect, we do not require that the defendant, at plea colloquy or sentencing, articulate the public policies or constitutional concerns we use to evaluate the validity of the waiver, nor do we ask whether the appeal waiver was part of the sentence or require a defendant to move to withdraw a plea to challenge an appeal waiver. The right to apply to Shock is statutory, not constitutional, but the analysis is the same. A defective waiver is a defective waiver. It is an abdication of our responsibility to refuse to assess the validity of a waiver that infringes upon either an important public policy or a constitutional right.
Suppose, for example, Mr. Silva Santos had agreed to waive his right to medical treatment while incarcerated, and accepted a shortened prison term in exchange for that waiver. In evaluating whether that waiver was enforceable, we would not ask whether it was a component of his sentence. Rather, we would ask whether there was a larger policy interest upon which that waiver would infringe. The same analysis would apply if Mr. Silva Santos had agreed to waive a trial-related right that is decidedly not part of his sentence: for instance, to be represented by counsel at trial, or had stipulated to a "trial by 12 orangutans" (see United States v Josefik, 753 F2d 585, 588 [7th Cir 1985, Posner, J.] ["No doubt there are limits to waiver; if the parties stipulated to trial by 12 orangutans the defendant's conviction would be invalid notwithstanding his consent, because some minimum of civilized procedure is required by community feeling regardless of what the defendant wants or is willing to accept"]).
As to the majority's claim that I am trying to reformulate Mr. Silva Santos's argument on appeal, the majority has quoted from his brief selectively, including the title of a subheading{**44 NY3d at 935} about preservation and statements relating to why his challenge was preserved, not the substantive claim he is making. Undercutting the majority's mischaracterization of Mr. Silva Santos's basic argument on appeal, his sole argument point heading reads: "Under Correction Law § 867 and Penal Law § 60.04(7)(a), a court lacks the authority to preclude DOCCS from considering an eligible individual for participation in the Shock incarceration program." He argues that the Correction Law and Penal Law "afford[ ] only DOCCS, and not courts, the discretion to exclude participation in the program"; "[b]ecause the waiver was illegal, it cannot bar Mr. Silva from applying to the program"; "[t]his waiver was plainly unauthorized by the Shock statutes"; "[n]othing in those statutes authorizes a sentencing court to preclude Shock eligibility"; and so on. The remedy to which Mr. Silva Santos is entitled is the one he expressly seeks: "This Court must strike the waiver from the sentence."
[*6]III.
I turn, then, to the public policy underlying the Shock program. The Shock program was established by the legislature in 1987 as part of a bill aimed at reducing prison populations by increasing opportunities for early release while simultaneously improving public safety (L 1987, ch 261).[FN1] The Shock program was designed to "instill a sense of maturity and responsibility in participating inmates and to help them develop a positive self-image so that they will be able to return to society as law-abiding citizens" (Budget Rep on Bills, Bill Jacket, L 1987, ch 161 at 9). The program's voluntary nature and rehabilitative focus ensured that eligible participants would be adequately prepared for release (id. at 10 ["(E)ligible inmates are limited to . . . (those) who have volunteered for a strict disciplinary and physical program combined with rehabilitation therapy"]). Additionally, the legislation gave DOCCS authority to review each participant's record of participation and to transfer those who did not successfully complete the program to other facilities to finish their prison terms (id.).
Until 2009, program participants were determined solely by DOCCS. As part of the Drug Law Reform Act (DLRA) of 2009,{**44 NY3d at 936} the legislature expanded access to the program by allowing judges to order Shock, though leaving the participation requirements and termination of Shock participation completely in the control of DOCCS (L 2009, ch 56, § 1, part AAA, § 18; see Penal Law § 60.04 [7]).[FN2] The expansion of Shock aligned with the broader purpose of the DLRA: to mitigate the impact of the Rockefeller Drug Laws, which had significantly increased the state's prison population; to use more productive and less costly alternatives to incarceration; and to reinvest savings into expanded drug treatment programs that would save taxpayer dollars, lower reoffending rates, "and help many addicted offenders turn their lives around" (Assembly Mem in Support of 2009 NY Assembly Bill A3984). The legislature recognized that Shock had been effective in achieving those goals. During the first 23 years of Shock's operation, the over 39,000 inmates who completed the program were found to have significantly lower rates of return to prison, and the program was estimated to have saved taxpayers over $1.3 billion (New York State Department of Corrections and Community Supervision, 2020 Report on the Shock Incarceration Program).{**44 NY3d at 937}
[*7]New York's Shock program was specifically designed with a focus on alcohol and substance abuse treatment (see National Institute of Justice, Shock Incarceration in New York: Focus on Treatment [Aug. 1994]). Participants undergo Alcohol and Substance Abuse Treatment (ASAT), a drug education and group counseling program, for a minimum of two three-hour sessions per week (id.). According to DOCCS, the program is "treatment oriented" and offers participants "intensified substance abuse and alcohol counseling" and "the opportunity to develop life skills which have proven to be important for success in society" (New York State Department of Corrections and Community Supervision, Lakeview Shock Incarceration Correctional Facility, https://doccs.ny.gov/location/lakeview-shock-incarceration-correctional-facility [accessed Jan. 22, 2025]). Studies conducted after 2009 have shown that Shock remains effective in reducing recidivism and saving taxpayers money. Between 2010 and 2016, program graduates had a 52% lower chance of being returned to prison within three years compared to non-graduates (New York State Department of Corrections and Community Supervision, 2020 Report on the Shock Incarceration Program).
IV. 
With the enactment of Correction Law § 865 and the creation of the Shock program, the legislature expressed a strong public policy in favor of rehabilitation. The legislature outlined basic eligibility criteria for the program, but gave DOCCS ultimate authority to select participants from the pool of eligible inmates and to administer their rehabilitation. Allowing district attorneys to condition plea agreements on nonparticipation in Shock strips DOCCS of that authority and ignores the legislature's clear command. This is especially true because the explicit intent of the 2009 amendments was to promote rehabilitation and expand access to Shock. A practice that transfers the determination of Shock eligibility from DOCCS to district attorneys contradicts the language and policy of the statute, as it bars otherwise eligible individuals from receiving rehabilitation.
The sentencing court has broad power to oversee and tailor plea bargains to individual circumstances, and we have approved of various conditions set on bargains, such as a requirement a defendant participate in drug treatment (People v Avery, 85 NY2d 503 [1995]) or not be arrested while on release awaiting sentencing (People v Outley, 80 NY2d 702 [1993]). However, those conditions have legitimate public policy ends: namely, to promote deterrence and to encourage and monitor a defendant's rehabilitative progress. There is no legitimate reason consistent with public policy to prevent someone otherwise suitable from entering a treatment program years after sentencing when, in DOCCS's determination, that person and society would be better served by inclusion in Shock (see People v Letterlough, 86 NY2d 259, 261 [1995] [probation condition requiring defendant convicted of driving while intoxicated "to affix to the license plate of any vehicle he drives a fluorescent sign stating 'CONVICTED DWI' " was "not reasonably related to defendant's rehabilitation, and . . . outside the authority of the court to impose"]).
[*8]
The People emphasize that Mr. Silva Santos was originally charged with an A-1 felony offense, which would have made him automatically ineligible to participate in Shock (see § 865 [1] [b]). The legislature clearly intended for individuals convicted of certain serious crimes to be ineligible for Shock, but Mr. Silva Santos was not convicted of an A-1 felony, and there is neither a guarantee that he would have been nor any assurance that the People would have rejected any plea to{**44 NY3d at 938} charge less than an A-1 but without a Shock waiver. The best indicator of legislative intent is what the legislature actually did: which was to make ineligible anyone who was "convicted of," not charged with, certain violent felonies (see id. [emphasis added]; Kimmel v State of New York, 29 NY3d 386, 392 [2017] ["We look 'first to the plain language of the statute( ) as the best evidence of legislative intent' " (quoting Matter of Malta Town Ctr. I, Ltd. v Town of Malta Bd. of Assessment Review, 3 NY3d 563, 568 [2004])]). The legislature was presumably aware that defendants usually bargain from more serious charges to lesser ones and chose to make conviction, not indictment, the basis for Shock ineligibility. Moreover, the fact that some defendants might be given a shorter sentence in exchange for a Shock waiver is not a reason against enforcing the public policy. Allowing defendants to waive rehabilitative programming during the plea-bargaining stage contradicts the broader societal interest in rehabilitation, regardless of the impact on any individual defendant.
The People also contend that the Shock statute places the decision to apply in the hands of the eligible incarcerated person, and that Mr. Silva Santos knowingly and voluntarily waived his right to apply and received a favorable deal as a result. The fact that some inmates may, after years of incarceration, choose not to apply to a program that is physically grueling does not diminish the broader public purpose of vesting DOCCS with a tool to foster rehabilitation and reduce recidivism from among those persons who wish to participate when the possibility for participation nears.
Because of the curious way in which the majority has disposed of this appeal, whether a Shock waiver violates public policy remains open for challenge by a different procedural vehicle—for example, by a declaratory judgment action, by an injunctive action compelling DOCCS to disregard plea-induced waivers of Shock, or by a challenge brought by an incarcerated person who applied and was rejected by DOCCS based on the plea waiver. Because I conclude that Mr. Silva Santos squarely preserved his challenge to the Shock waiver, and the procedural disentitlement arrived at [*9]by the majority here is not relevant to the question presented, I would reverse and hold that Shock program waivers contained in a plea agreement are void as against public policy.
Judges Garcia, Singas, Cannataro, Troutman and Halligan concur. Chief Judge Wilson dissents in an opinion, in which Judge Rivera concurs.{**44 NY3d at 939}
Order affirmed, in a memorandum.

Footnotes

Footnote 1:See Mark A. Uhlig, Albany Reaches Accord on New Prison Measure, NY Times, July 9, 1987, https://www.nytimes.com/1987/07/09/nyregion/albany-reaches-accord-on-new-prison-measure.html. The 1987 bill also expanded earned eligibility and work release (Budget Rep on Bills, Bill Jacket, L 1987, ch 261 at 6-7).

Footnote 2:The DLRA also increased the age cutoff for Shock eligibility from 40 to 49 years and introduced "rolling admission" for individuals in the final three years of their sentences (L 2009, ch 56, § 1, part L).